[Crim. No. 4833. Second Dist., Div. Two. Jan. 16, 1953.]

THE PEOPLE, Respondent, v. J. PAUL ELLIOTT, Appellant.

Paul Barksdale d'Orr for Appellant.

Edmund G. Brown, Attorney General, Dan Kaufmann, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), and Mark Brandler, Deputy District Attorney, for Respondent.

McCOMB, J.—The Grand Jury of Los Angeles County in an accusation charged defendant with wilful and corrupt misconduct in office under section 3060 of the Government Code, in that as a member of the Board of Education of the City of Los Angeles he violated section 1011 of the Education Code and section 1090 of the Government Code by being interested in nine contracts entered into by the board of education and the Landier Management Company, a corporation.

The accusation contains nine specifications of misconduct, each one being based on a separate contract. The contracts ranged in dates from July 11, 1949, to and including March 1, 1951.

Defendant was tried before a jury and found guilty of wilful and corrupt misconduct in office. Motion for a new trial was denied and the court pronounced judgment removing him from office as a member of the Board of Education of the Los Angeles City School District, Los Angeles City High School District, and Los Angeles Junior College District.

From the judgment of conviction and the order denying his motion for a new trial, defendant appeals.

*Questions*: First: *Did the accusation state facts sufficient to constitute the offense of wilful and corrupt misconduct in office?*

*Yes.* Defendant was accused by the Grand Jury of Los Angeles County under the provisions of section 3060, Government Code, of wilful and corrupt misconduct in office as a member of the Board of Education of the City of Los Angeles, in that he violated section 1090, Government Code, and section 1011, Education Code, by having an interest in certain specified contracts with Landier Management Company.

Defendant concedes the applicability of section 1011 of the Education Code, which reads as follows: "No member of the governing board of any school district shall be interested in any contract made by the board of which he is a member."

█ This being true the accusation stated a cause of action, because in order to constitute misconduct it is not necessary that the act be a crime. (*In re Reid*, 182 Cal. 88, 89 et seq. [3] [187 P. 7]; In the *Matter of Burleigh*, 145 Cal. 35, 37 [78 P. 242]; *Coffey* v. *Superior Court*, 147 Cal. 525, 529 [82 P. 75].)

█ Defendant contends however that section 1090 of the Government Code is not applicable to him since school board members are not mentioned in the section, which provides: "Members of the legislature, state, county, judicial district and city officers shall not be interested in any contract made by them in their official capacity, or by any body or board of which they are members," and therefore such school board members are excluded.

This contention is devoid of merit for the reason that school board members are both city and state officers. The state Constitution, article XI, section 8½, subdivision 2, specifically permits chartered cities to provide the manner in which, the times at which, and the terms for which the members of the boards of education shall be elected or appointed; for their qualifications, compensation and removal; and for the number which shall constitute any one of such boards. In accordance with this power the city of Los Angeles has provided for the board of which defendant is a member, specifically including board members as city officials. (Cal. Stats., 1925, p. 1039, L. A. City Charter, art. II, § 5.) The courts have consistently recognized the two-fold nature of school board members as both city and state officials. (See *Becker* v. *Council of the City of Albany*, 47 Cal.App.2d 702, 705 [1 & 2] [118 P.2d 924].) To the extent that the city can provide for the removal of the members of the board of education

for misconduct in having an interest in a contract entered into by the board, such members are clearly municipal officers.

The term "state officers" is not limited to officers whose jurisdiction is coextensive with the state but applies generally to persons clothed with functions which affect the public and duties assigned to them by state laws. The state Legislature may in the exercise of its police power direct the performance of prescribed state functions through local officers within the counties of the state, and to the extent that local officers discharge such duties they act as state officers. Clearly a member of the board of education falls within the foregoing rule. (*Cf. People* v. *Richards,* 86 Cal.App. 86, 89 [260 P. 582].)

The matter of education is of statewide concern and is one of the responsibilities of the state government. A member of the school board who carries out that responsibility on behalf of the state is therefore a state officer notwithstanding his activities may be limited to any particular city. Thus there is no reasonable basis for excluding him from the classification of "state officer" as used in section 1090 of the Government Code. (See *People* v. *Richards, supra,* 89.)

It logically follows that section 1097 of the Government Code is also applicable to defendant. Section 1097, Government Code, reads in part: "Every officer or person prohibited by the laws of this State from making or being interested in contracts, . . . who violates any of the provisions of such laws, is punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in the State prison for not more than five years, and is forever disqualified from holding any office in this State." There is nothing in the history of the Education and Government Code provisions, which defendant sets forth at length, which detracts from the foregoing conclusions, nor does the fact that the Legislature has seen fit to place a different civil penalty in section 1092, Government Code, as contrasted with section 1013 of the Education Code, alter our conclusions.

Second: *Was the accusation of the grand jury sufficiently specific?*

*Yes.* The accusation charged defendant with nine specific acts of wilful and corrupt misconduct in office in that he, as a member of the board of education, in violation of section 1011 of the Education Code and section 1090 of the Government Code, was interested in nine specified contracts

made by the board of education of which he was then a member. The specific dates of the contracts, the number of the contracts and the Landier Management Company as contractor were all specifically alleged. These allegations meet the requirements of section 3061 of the Government Code which provides: ''The accusation shall state the offenses charged in ordinary and concise language, and without repetition.'' The primary purpose of the accusation is to apprise defendant of the offense of which he is accused so he may make his defense thereto. (*Reid* v. *Superior Court*, 44 Cal.App. 349, 356 [186 P. 634].)

It is likewise unnecessary for the accusation to set forth in detail all the facts constituting defendant's prohibited interest in a contract. (*Woods* v. *Varnum*, 85 Cal. 639, 646 [24 P. 843].) In addition defendant was furnished a copy of the grand jury proceedings containing all the testimony and exhibits which were the basis for the return of the accusation. These documents fully informed him as to the character of the charges and acquainted him with the evidence to be used against him at the trial. (*People* v. *Harby*, 51 Cal.App.2d 759, 766 [1] [125 P.2d 874].)

In other words, the accusation specifically advised defendant that he was a member of the board of education and while serving as such, in violation of two specified statutes of this state, he acquired an interest in contracts entered into by the board of education, of which he was a member, with the Landier Management Company. Under the new rules of pleading in criminal cases, an accusation is sufficient if it charges the offense and the enactment describing it and the details are supplied by a copy of the transcript of the proceedings before the grand jury, which defendant received. (*People* v. *Pierce*, 14 Cal.2d 639, 645 [96 P.2d 748]; *People* v. *Codina*, 30 Cal.2d 356, 358 et seq. [181 P.2d 881].)

Third: *Was there substantial evidence to sustain the trial jury's finding that defendant was guilty of wilful and corrupt misconduct in office?*

*Yes.* The evidence disclosed that defendant was a member of the board of education of Los Angeles City at the time it entered into nine contracts with the Landier Management Company to provide bus transportation for pupils of the school district.

Defendant, as a member of the board, voted to approve each of these contracts. At the time of the first contract defendant was the attorney for F. P. Landier and at the

time each of the succeeding eight contracts was entered into defendant was attorney for the Landier Management Company, Landier and the Landier interests. In accepting his employment as attorney for the transportation contractor with the school board, defendant, who had been an attorney for over 30 years, acted with full knowledge of the relationship between his employer-contractor and the school board of which he was a member. The inference naturally follows that he deliberately, wilfully and knowingly created this personal and financial interest on his part in the contracts between the school board and the school bus contractor, which interest is the basis for the charge of wilful and corrupt misconduct in office, and his subsequent conviction and removal from office.

The parties to the school board contracts were the Los Angeles City Board of Education and the Landier Management Company, a California corporation. Defendant was the attorney for this contractor of record. While a member of the board and before the contracts set forth in the specifications two through nine were entered into, defendant sent to the Landier Management Company a letter on his attorney letterhead, advising the company that defendant, by agreement with Mr. Landier, was to receive from the Landier Management Company a monthly retainer fee of $200 payable on the first of each month. Prior to mailing this letter, Mr. Landier had explained to defendant at the latter's office that the Landier Management Company operated the school buses on school contracts and advised defendant to address this letter to the Landier Management Company.

Defendant then billed the company for services already rendered to that company and subsequently received a total of four Landier Management Company retainer checks during the period the contracts covered by specifications two, three and four were entered into with the board.

Defendant actually performed services for the Landier Management Company in connection with its contracts with the board of education. Each of the transportation contracts required that the company carry public liability and property damage insurance, and that the school district be named as a co-assured on the insurance policy. The company was having some problems in connection with the carrying of this insurance and its president, together with Mr. Landier met defendant in his office to discuss these problems. Copies of

their policies naming the company as the insured and the board of education as the co-insured were left with defendant for his examination and inspection. Subsequent to this meeting defendant had several discussions and meetings in connection with this insurance problem. The president of the company telephoned defendant to obtain his advice relative to the use of an abbreviation for the word "Company" on the school buses. Defendant checked on the matter and then gave his advice to the president. On another occasion defendant had a telephone conversation with the president of the Landier Management Company concerning the financial difficulties of one of the employees, a school bus driver.

All this time defendant was voting on each of the contracts when it was approved by the board, making no disclosure of his relationship with the Landier Management Company to any other school board member. Defendant, as president of the board, signed his name to one of the school contracts, and at that time the signature of Harry H. Rosenfeld, on behalf of the Landier Management Company, was on the contract directly below the space provided for defendant's signature. This was done only two weeks after he had received a retainer check from the Landier Management Company and three weeks before he received another check, each being signed by Harry H. Rosenfeld as president of the Landier Management Company.

There is ample other evidence to support the jury's finding that defendant, while acting as attorney for the Landier Management Company and the Landier Transit Company, whose stock was all owned by the Landier Management Company, voted for contracts between the board of education, of which he was a member, and the Landier Management Company.

No useful purpose would be served by setting forth such evidence in detail. It is established that the unlawful interest of a public officer in a public contract which is prohibited, is a "personal interest which might interfere with the unbiased discharge of his duty to the public or prevent the exercise of absolute loyalty and undivided allegiance to the best interests of the governmental unit which he represents." (*Raymond* v. *Bartlett*, 77 Cal.App.2d 283, 286 [3] [175 P.2d 288]; *Salada Beach etc. Dist.* v. *Anderson*, 50 Cal. App.2d 306, 309 [123 P.2d 86]. *Cf. Hobbs, Wall & Co.* v. *Moran*, 109 Cal.App. 316, 318 [2] [293 P. 145].)

Under the foregoing evidence defendant was not only the attorney for the principal transportation contractor of the board but was also attorney for the principal creditor of said company, which the record shows was receiving 10 per cent to 14 per cent of the gross receipts of the transportation company from the board of education by way of commissions for purported services rendered in the obtaining of board of education contracts. It was therefore to defendant's interest to have the board continue to award contracts to the Landier Management Company. As long as this business continued he was assured his retainer agreement would be continued, not only with the Management Company but also with Mr. Landier personally, since the latter benefited not only because he was a principal creditor of the Management Company and received payments on account of it, but also because he personally gained by reason of his commission agreements with the company. The more business the Management Company got, the greater its need for legal services and the more likelihood of its continuing to retain defendant.

The evidence supports the jury's finding that defendant's conduct was both wilful and corrupt. (*People* v. *Becker*, 112 Cal.App.2d 324, 326 [1] [246 P.2d 103].)

There are two classes of misconduct for which a public officer may be removed from office, (a) wilful misconduct, and (b) corrupt misconduct. (*Coffey* v. *Superior Court*, 147 Cal. 525, 529 [82 P. 75] ; *Reid* v. *Superior Court*, 44 Cal.App. 349, 361 [186 P. 634].)

The word "wilfully" is defined in subdivision (1) of section 7 of the Penal Code as follows:

"The word 'wilfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose of willingness to commit the act, or make the omission referred to. It does not require an intent to violate law, or to injure another, or to acquire any advantage."

The word "knowingly" is defined in subdivision (5) of section 7 of the Penal Code as not requiring any knowledge of the unlawfulness of the act or omission which constitutes a transgression of the law, but only knowledge that the facts exist which constitute the transgression.

The word "corruptly" is defined in subdivision (3), section 7 of the Penal Code as follows:

"The word 'corruptly' imports a wrongful design to acquire or cause some pecuniary or other advantage to the person

guilty of the act or omission referred to, or to some other person."

In *Coffey* v. *Superior Court, supra,* at page 529, our Supreme Court said:

"The phrase 'misconduct in office' is broad enough to include any wilful malfeasance, misfeasance, or nonfeasance in office. (*State* v. *Slover,* 113 Mo. 202, 208 [20 S.W. 788].)

"In Mechem on Public Officers (sec. 457) it is stated that 'misconduct in office does not necessarily imply corruption or criminal intention. The official doing of a wrongful act, or official neglect to do an act which ought to have been done, will constitute the offense, although there was no corrupt or malicious motive.' " (See, also, *People* v. *Harby,* 51 Cal.App. 2d 759, 767 [2] [125 P.2d 874].)

 It was not essential for the prosecution to prove corrupt misconduct of defendant in order to justify removal from office. However, the evidence supports the conclusion of the jury that defendant was guilty of corrupt misconduct as well as wilful misconduct. In addition to the evidence set forth above, the jury had before it the following facts:

At defendant's request communications from the transportation company relating to each of the contracts in question were delivered to defendant's law office prior to the time defendant, as a member of the board, voted to approve the contracts. Defendant voted on these contracts and at no time did he disclose to any member of the board, or to the legal advisor of the board, his relation to the Landier interests, including the contractor named in the contract by the board. Nor did he disclose these facts to the grand jury when it was investigating them.

The jury was, of course, entitled to disregard defendant's explanation while accepting his statement that as a member of the board he knew companies bearing the name of Landier had handled school transportation for a long time, and there was no distinction in his mind between the Management Company, Transit Company, or any other company bearing the name Landier. Also the evidence was before the jury that prior to defendant's mailing the retainer letter in January, 1950, to the Management Company, Mr. Landier had explained to him very definitely that the Management Company operated the school buses, and Mr. Landier told him to address the retainer letter to the Management Company.

It is unnecessary to set forth additional corroborative evidence here.

■■■ Fourth: *Does the phrase "wilful misconduct" as it appears in section 3060 of the Government Code require an evil intent or purpose to do wrong?*

*No.* Section 3060, Government Code, reads:

*"Accusation against district, county, township, or municipal officer: Presentation by Grand Jury: Concurrence of 12 jurors.* An accusation in writing against any district, county, township, or municipal officer, for wilful or corrupt misconduct in office, may be presented by the Grand Jury of the county for or in which the officer accused is elected or appointed. An accusation may not be presented without the concurrence of at least 12 grand jurors."

This identical contention was raised in the case of *People* v. *Becker,* 112 Cal.App.2d 324 [246 P.2d 103] (hearing denied by the Supreme Court). The contention was rejected by the appellate court which relied upon the definition of the word "wilful" as it appears in section 7 of the Penal Code. (See our discussion of this subject in answer to question Third, *supra.*)

■■■ Fifth: *Did the trial court commit prejudicial error in instructing the jury as follows?*

"In seeking to establish a violation of Government Code Section 1090 or Education Code Section 1011, the People do not have to prove actual fraud, dishonesty, or loss; nor is it a defense to an alleged violation of Government Code Section 1090 or Education Code Section 1011 that there was no actual fraud or dishonesty or loss."

*No.* The foregoing instruction was a correct statement. (*Hobbs, Wall & Co.* v. *Moran,* 109 Cal.App. 316, 319 [3] [293 P. 145].) There is no merit in defendant's claim that this instruction told the jury they could find defendant guilty of corrupt misconduct even though they found no dishonesty or fraud on his part. The instruction merely advises the jury that fraud and dishonesty are not essential in proof of an interest in a contract prohibited by law. It does not purport to define, limit or extend other instructions given to the jury defining wilful misconduct and corrupt misconduct.

Even though the jury found defendant had an unlawful interest in a public contract in violation of section 1011 of the Education Code and 1090 of the Government Code, before they could return a verdict of guilty of the charges, they would have to consider the other instructions given them to

ascertain whether or not this prohibited interest constituted wilful misconduct or corrupt misconduct.

Though they found no fraud or dishonesty in connection with this interest they would have to find under other instructions that such interest was acquired wilfully and knowingly by defendant in order to conclude he was guilty of wilful misconduct and in order to conclude he was guilty of corrupt misconduct; under the other instructions they would have to find he had a wrongful design in connection with that interest. None of the instructions told the jury that in and of itself it was sufficient to establish wilful or corrupt misconduct, if the evidence showed defendant had an unlawful interest in a public contract.

The instructions viewed as a whole told the jury they had to find all the elements of wilful misconduct present or all the elements of corrupt misconduct present in order to find defendant guilty.

 Sixth: *Did the trial court commit prejudicial error in the admission of evidence (a) relative to the relationship of Mr. Landier with the Landier Companies, and (b) relative to the fact that after defendant was employed as attorney for the Landier interests the law firm of Spray, Gould and Bowers was dismissed, and when defendant ceased to represent the interests such firm was reemployed?*

*No.* (a) Testimony and exhibits were received in evidence in connection with the arrangements for the purchase and sale of Mr. Landier's school bus business and transit company business to the Landier Management Company, as well as the disposition of the stock in this to Rosenfeld and others. There was also evidence showing agreements between Mr. Landier and the Management Company in which that company agreed to pay Mr. Landier commissions up to 14 per cent of the gross revenue obtained from board of education contracts for his assistance in negotiating said contracts.

The above evidence established that Mr. Landier was not only the principal creditor of the Landier Management Company, but that he retained a proprietary interest in it because it could not transfer any assets without his consent, and in the event of default by the company its assets reverted to him. This evidence also established that Mr. Landier, as agent for the Management Company, directly participated in the proceeds received by the company from the board of education in connection with school bus contracts, indicating the very contracts involved in the specifications of the grand

jury accusation against defendant. Thus a substantial portion of every bit of income received by the Landier Management Company from the school bus business with the board went to Mr. Landier either in the form of commissions or in the form of payments to the purchase price of the school bus business or the transit company business. Defendant was Mr. Landier's personal attorney and thus was also profiting from these payments, since this steady income of Mr. Landier insured his retainer.

The jury was entitled to have before it all the evidence showing how closely involved all these Landier interests were.

(b) Evidence was admitted that immediately after defendant was retained as attorney by the Landier Management Company such company released from retainer the law firm of Spray, Gould and Bowers, which had previously done legal work for it, and then rehired it after defendant terminated his relationship with the Landier Management Company and Landier Transit Company.

The sole objection to this evidence was that knowledge thereof had not been brought home to defendant.

Such evidence was relevant and admissible even though defendant had no knowledge thereof, since there was a permissive inference from such evidence that defendant took the place of the law firm which had rendered legal service to the Landier Management Company prior to defendant's retainer, and in turn took defendant's place after he terminated his retainer. In addition, such testimony was admissible to rebut the statement of defendant that he was retained by the Landier Management Company by mistake, and that he was to have been hired only by the Landier Transit Company.

Such testimony was not hearsay as these facts were testified to directly by Mr. Rosenfeld from the witness stand. In any event there was no showing of prejudice resulting from the admission of such testimony and this court must disregard such alleged error in view of the provisions of Article VI, section 4½ of the Constitution of the State of California.

■■■ Seventh: *Did the trial court commit prejudicial error in furnishing the jury only two forms of verdict; one of guilty of the crime of wilful and corrupt misconduct in office, and one of not guilty of the same offenses?*

*No.* There are two classes of misconduct under section 3060 of the Government Code; (1) wilful misconduct and (2) corrupt misconduct. The trial judge fully instructed

the jury in this respect, defining the elements of each type of misconduct. He also fully instructed the jury that all 12 of them must agree the misconduct was wilful or all 12 of them must agree the misconduct was corrupt.

The verdicts submitted by the trial judge were in accordance with these instructions. Defendant neither complained of the forms of verdicts, nor did he submit any forms of verdicts himself. It is not the duty of the judge to furnish forms of verdict to the jury, and it is presumed that if their conclusion calls for a form of verdict with which they are not furnished, they will either ask for it or write one for themselves. (*People* v. *Hill,* 116 Cal. 562, 570 [48 P. 711]. See, also, *People* v. *Chapman,* 93 Cal.App.2d 365, 385 [24] [209 P.2d 121]; *People* v. *Corbin,* 118 Cal.App. 392, 396 [5 P.2d 460]; *People* v. *Mack,* 115 Cal.App. 588, 593 [7] [2 P.2d 209].)

In the present case had the jury concluded that defendant was guilty of either wilful or corrupt misconduct, but not both, it could easily have stricken from the verdict furnished it the appropriate words. After the verdict was returned the jury was polled, and each juror individually answered affirmatively that it was his verdict.

An examination of the record discloses it to be extremely free from error.

The judgment and order are and each is affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied January 29, 1953, and appellant's petition for a hearing by the Supreme Court was denied February 11, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.