[Crim. No. 1210.   Fourth Dist.   Sept. 28, 1956.]

THE PEOPLE, Appellant, v. MAURICE E. TICE,
Respondent.

Joe Wooldridge, District Attorney (Kern), and Marvin E. Ferguson, Assistant District Attorney, for Appellant.

W. C. Dorris and Dorris, Fleharty, Phillips & Underhill for Respondent.

BURCH, J. pro tem.*—This is an appeal by the People from an order granting a motion for a new trial following a trial in which the jury found defendant guilty of misconduct in office. The defendant is the marshal of the Kern County Bakersfield Judicial District, an office which he has occupied since the institution of that judicial district in 1952.

On November 17, 1955, an accusation was presented by the Kern County Grand Jury accusing the defendant of 21 specifications of wilful misconduct in office as marshal of the municipal court in said district. Eight of the 21 specifications were dismissed on motion before trial. After the jury returned a verdict of guilty on specifications 3 to 7 inclusive the remainder of the 21 were dismissed by the court.

The five specifications upon which the jury found the defendant guilty alleged that on the several dates of March 29, March 30, April 1, April 5 and April 7, respectively, the defendant issued checks upon a bank deposit of public funds under his official control as marshal, which checks were drawn upon insufficient funds.

The defendant moved for a new trial alleging that the verdicts were contrary to the law and the evidence, and that the trial judge erred in admitting evidence of conduct that occurred in a term of office prior to the term he was serving when charged with misconduct. The motion was granted on both grounds.

Defendant's office was administered by him with an assistant and deputy marshals providing bailiff service for the municipal court and the service and execution of legal process. With respect to the latter function the defendant was provided receipt forms furnished by the county.

Defendant's records and accounts, including funds on hand in the office, on deposit in banks authorized to receive county funds, and deposits made into the county treasury were audited annually and no irregularities thereby were shown in evidence. The latest audit of that character was in January, 1955. A special audit thereafter revealed the over-

*Assigned by Chairman of Judicial Council.

drafts involved here. The defendant had deposited moneys in his control in a bank as a depository of public funds, subject to remittance monthly to the county treasury. It was proved that on the dates of March 29th and 30th, and April 1st, 5th and 7th, the bank funds on deposit were insufficient to meet checks drawn thereon on those dates. The fact that checks were issued and outstanding with insufficient funds in the depository went to the jury as a stipulated fact binding upon the defendant.

The question on appeal is whether this fact, supported by evidence that the defendant was informed of the failure of his office, on other occasions, to correctly and lawfully handle the public moneys in his charge, made the granting of a new trial by the trial judge an abuse of judicial discretion. The record discloses that the public moneys in defendant's charge were handled with something less than the care which would protect against their unwarranted and unlawful uses by office personnel who might prove untrustworthy. There was, for instance, evidence that money received was sometimes kept in a cash box, in desks, files and envelopes, and that checks were found which were delayed in deposit. At times checks were drawn but not delivered.

Defendant testified in his own behalf, stating the nature of his work as marshal, in general, and the administrative methods he employed in his office, including the duties assigned to office personnel, process servers and bailiffs under the control of the marshal and assistant marshal. He was questioned about the bookkeeping system, and said:

"Mr. Mansfield was the administrator for the County of Kern at that time, and he came in and assisted us in ordering all types of forms and systems . . . he was over there from the time we opened . . . maybe most of the whole month . . . He instructed me and Miss Camp at that time was in the office—taking care of the office, the money and systems to be carried out, and he instructed her and I together."

He testified that Miss Camp had worked for defendant since 1947, when he was a constable in Bakersfield. Defendant and Miss Camp were instructed as to funds by Mr. Mansfield.

"Well, when we went out and brought in any money . . . for services . . . or money that belonged to the plaintiffs . . . or attorneys on executions or attachments, we didn't always get the money on attachments because the employer or the bank held that money until the execution, but whenever we

did get the money, it was put in our checking account which was opened up, and endorsed by him in the Anglo Bank; and then it was checked out what money was to be paid over to the County that was held pending a judgment, called trust money, and then at the end of the month all the County fees were made up and the amount reached and a check issued from that account to the County Treasurer; and any individual that had any money coming on execution . . . That was the instructions given to Miss Camp in the office.''

He said Miss Camp had been his trusted employee handling the funds when he was a constable, and had theretofore proved trustworthy.

''Q. Now who had charge of the money after you were Marshal?

''A. Well, Miss Camp had charge of all the making out of the papers and all the banking and all the issues of checks . . . under my instructions that was her duty.

''Now did you ever know that Miss Camp was not following out your instructions?

''I did not . . . Miss Camp was given the power to sign the checks by me.

''Q. And did you ever sign any checks?

''I believe during the whole course of time I might have signed a half dozen . . . that would only be in her absence. . . .

''My office was audited once a year and as late as January, 1955. . . . No complaint was ever made to me by the auditors that anything was wrong in my office.''

The attorney for the People makes the point that the defendant knew or should have known of the stipulated overdrafts of specifications 2 to 7 inclusive. The following testimony of defendant bears upon the point:

''Miss Campbell from the County Counsel's office was little anxious sometimes to get her papers back, and the girls were piled up with quite a bit of work; . . . she called up and wanted to know why she couldn't get her papers back, and I told her that I would see to it that she got them back in a short time, and I did; and they were sent back. That's the only time that I had ever had any complaint, and I did find that they were overstacked with work, and there were other papers to get out before hers that came in. . . .

''Did anybody ever complain to you any time about any shortage?

''They did not.''

All the checks were honored by the bank, without informing defendant of the overdraft.

If, as appears to us, we have extracted from almost a thousand pages of transcript, enough to indicate a reasonable doubt of guilt projected upon the trained mind of the trial judge, it is unnecessary to lengthen the statement of the evidence.

It is true the phrase "misconduct in office" is broad enough to include any wilful malfeasance, misfeasance or nonfeasance in office. As pointed out in *People* v. *Elliott,* 115 Cal.App.2d 410 [252 P.2d 661], misconduct for which a public officer may be removed from office on accusation by a grand jury may be either wilful or corrupt. "Wilfully," in this connection, "implies simply a purpose of willingness to commit the act, or make the omission referred to. It does not require an intent to violate law, or to injure another, or to acquire any advantage." However, "knowingly" requires "knowledge that the facts exist which constitute the transgression." (See *People* v. *Elliott, supra,* p. 419.)

"It is elementary that, in determining the sufficiency of the evidence on a motion for a new trial, the trial judge is not bound by the rule as to conflicts in the evidence. He may disregard such evidence as he believes to be untrue and may draw inferences therefrom at variance from those drawn by the jury. The rule that the court will not disturb findings based on conflicting evidence applies only to the appellate court. It has no application to a trial judge in passing on a motion for a new trial. (*People* v. *Harband,* 99 Cal.App. 32 [277 P. 1102])." (*People* v. *Megladdery,* 40 Cal.App.2d 748, 768 [106 P.2d 84].)

An extensive quotation from *People* v. *Canfield,* 173 Cal. 309, 311 [159 P. 1046], set out in the Megladdery opinion (pp. 768-769) spells out the sharp line of distinction between the duties of the trial and reviewing courts in cases of this character.

The defendant is entitled to a decision on the evidence by the trial court even though the jury has brought in a verdict against him.

"While the solemn verdict of a jury should not lightly be vacated the responsibility nevertheless rests with the court again to review the cause and only after such review to decide the application for a new trial. (*Olinger* v. *Pacific Greyhound Lines,* 7 Cal.App.2d 484 [46 P.2d 774].)" (*People* v. *Megladdery, supra,* 40 Cal.App.2d, at p. 770.)

In the instant case the stipulated overdrafts are not

conclusive of wilful misconduct in office on the part of the marshal. The specifications charged the defendant "did wilfully and unlawfully know or should have known" of the several overdrafts. Upon the record there is ample reason to support the conclusion by the trial court that defendant did not know of the irregularities, and beyond that his failure of awareness might impress the court as more a mistake of judgment than a purposeful disregard of the care and diligence which would have avoided the overdrafts. If this be true and the trial court so believed it was his duty under the authorities above cited to grant the motion for a new trial. "That is a matter solely within his power. This court is not permitted to overrule that discretion." (*People* v. *Megladdery, supra,* 40 Cal.App.2d, at p. 785.)

The order appealed from is affirmed.

Griffin, Acting P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 24, 1956.