TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  | : |  |
|---|---|---|
| OPINION | : | No. 98-1010 |
| | : | |
| of | : | February 4, 1999 |
| | : | |
| BILL LOCKYER | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

JEROLD A. GODDARD has requested this office to grant leave to sue in quo warranto upon the following:

ISSUES OF FACT OR LAW

Did the office of city clerk of the City of Redondo Beach become vacant by virtue of the officeholder's conviction of a violation of Vehicle Code section 4463, subdivision (a)(1)?

CONCLUSION

Whether the office of city clerk of the City of Redondo Beach became vacant by virtue of the officeholder's conviction of a violation of Vehicle Code section 4463, subdivision (a)(1) presents substantial issues of fact and law; however, the application for leave to sue is denied due to the expiration of the term of office on March 30, 1999.

PARTIES

JEROLD A. GODDARD ("relator") contends that JOHN L. OLIVER ("defendant") is unlawfully holding and exercising the office of city clerk of the City of Redondo Beach ("City").

MATERIAL FACTS

The City is a chartered municipal corporation situated within the County of Los Angeles. Defendant was elected to and entered upon the office of city clerk on April 1, 1995, for a term which expires on March 30, 1999. In the event that the election of March 2, 1999, for municipal offices results in a runoff, defendant's current term would extend to May 14, 1999.

On July 7, 1998, defendant was charged with the crime of forging a vehicle registration license tag in violation of Vehicle code section 4463, subdivision (a)(1),[1] a felony. The criminal complaint alleged:

---

[1] All references hereafter to the Vehicle Code are by section number only. Section 4463, subdivision (a) provides:

"Every person who, with intent to prejudice, damage, or defraud, commits any of the following acts is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison for 16 months, two or three years, or by imprisonment in the county jail for not more than one year:

"(1) Alters, forges, counterfeits, or falsifies any certificate of ownership, registration card, certificate, license, license plate . . . or permit provided by this code . . . ."

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . ."

"On or about October 27, 1997, in the County of Los Angeles, the crime of FORGERY OF A REGISTRATION TAB, in violation of VEHICLE CODE SECTION 4463(a), a Felony, was committed by JOHN LYNN OLIVER, who did unlawfully and with intent to defraud, alter, forge, counterfeit, and falsify a registration card to and for a motor vehicle. . . ."

The basis for the charge was that defendant, over a seven-year period, fabricated a number of annual registration license tags for his vehicles, including a boat and trailer. He affixed the unauthorized facsimiles to several of his vehicles during this period and kept the materials for making the forgeries in his garage. He purchased a van in 1990 without registering it, and did not pay annual registration fees for the van over the seven-year period. On October 27, 1997, a parking control officer saw the van on a street with a forged license tag, which led to further investigation and defendant's arrest.

On August 10, 1998, defendant entered a plea of nolo contendere[2] to a violation of section 4463, subdivision (a)(1), a felony. The court accepted the plea, found the defendant guilty, declared the offense a misdemeanor pursuant to Penal Code section 17, subdivision (b),[3] suspended imposition of sentence, granted summary probation for three years on certain conditions, including that defendant perform 300 hours of public service and pay a fine of $200, and report back to the court on February 8, 1999, as to the progress of his probation. The court took into account "the very real likelihood that he is going to lose his job."

---

[2] A plea of nolo contendere is a conclusive admission of guilt and constitutes a conviction within the ordinary as well as the technical meaning of the word. (*People* v. *Jones* (1995) 33 Cal.App.4th 1087, 1093-1094.)

[3] Penal Code section 17, subdivision (b) provides:

"When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . . .

"(3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . ."

Under the City's charter, the city clerk's duties include administering the financial affairs of the City, supervising all expenditures and disbursements of the City, providing and maintaining a general accounting system for the City, and approving all charges against the City before payment.

Refusing to follow the legal advice of the city attorney, the city council has not declared vacant the office of city clerk.

ANALYSIS

In deciding whether to grant leave to sue in the name of the People of the State of California in a quo warranto action, we consider initially whether there exists a substantial question of law or fact that requires judicial resolution, and if so, whether the proposed action would serve the overall public interest. (81 Ops.Cal.Atty.Gen. 98, 100 (1998).) An action in quo warranto is an appropriate remedy to test the right of a person to hold public office, including a local office of a charter city. (*Hallinan* v. *Mellon* (1963) 218 Cal.App.2d 342, 347-348; 81 Ops.Cal.Atty.Gen. 207, 208 (1998).)

A charter city is granted plenary power by the Constitution to provide for the election, appointment, and removal of its officers and employees. (*Baines* v. *Zemansky* (1917) 176 Cal. 369, 377; *Scheafer* v. *Herman* (1916) 172 Cal. 338; *Dinan* v. *Superior Court* (1907) 6 Cal.App. 217.) Specifically, subdivision (b) of section 5 of article XI of the Constitution provides as follows:

> "It shall be competent in all city charters . . . and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal . . . ."

Accordingly, the provisions of a city charter relative to the removal or discharge of a city officer generally supersede inconsistent general laws. (*Craig* v. *Superior Court* (1910) 157 Cal. 481; *Curphey* v. *Superior Court* (1959) 169 Cal.App.2d 261, 266.)

We turn to the city charter of the City to determine whether the criminal conviction in question operated, without regard to any administrative action by the city

council, to create a vacancy in the office of the city clerk. Article X, section 10.2, of the city charter provides in part as follows:

> "In the event any elective official of the City of Redondo Beach . . . is convicted of a crime involving moral turpitude, or otherwise ceases for any reason to be eligible to hold office, his office shall become vacant and shall be so declared by the City Council."

We entertain no doubt that defendant was convicted of a crime involving moral turpitude. In 75 Ops.Cal.Atty.Gen. 64, 69 (1992), we stated with respect to pleading nolo contendere to a misdemeanor charge of filing a false travel claim with intent to defraud the state:

> "We do not have here an offense that involves purely 'private' conduct. [Citations.] Rather, it is conduct that is detrimental to the state itself and bears direct relationship upon the fitness to perform official state duties. [Citation.] Because the victim of this crime of moral turpitude is the public, the very party whom the public officer was elected to represent, a violation of duties owed to the public is clearly involved. As was noted in the context of duties owed by an attorney to his client:
>
> " 'The term moral turpitude includes fraud and has been said to mean dishonesty and conduct not in accordance with good morals; being based on moral guilt, it implies intentional breach of the duty owed to a client as distinguished from an unintended failure to discharge his duties to the best of his ability.' [Citation.]" (*Id.*, at p. 69.)

We also quoted from the Supreme Court's decision in *In re Hallinan* (1954) 43 Cal.2d 243, 247-248, as follows:

> "Although the problem of defining moral turpitude is not without difficulty [citations], it is settled that whatever else it may mean, it includes fraud and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. [Citations.] It is also settled that the related group of offenses involving intentional dishonesty for purposes of personal gain are crimes involving moral turpitude. [Citations.] . . . We see no moral distinction between defrauding an individual and defrauding the government [citation], and an attorney, whose standard of conduct should be one of complete honesty [citation], who is convicted of either offense is not worthy of the trust and confidence of his clients, the courts, or the public, and must be disbarred, since his conviction of such a crime would necessarily involve

moral turpitude." (*Id.*, at p. 69, fn. 9.)

Here, defendant defrauded the public by not paying state registration license fees over a seven-year period. To the extent he failed to pay the requisite state fees, he benefitted himself financially. He also fabricated registration license tags and placed them on numerous vehicles for at least the same seven-year period. Inasmuch as defendant pleaded nolo contendere to a charge of forgery of a registration tab, a felony, with intent to defraud, alter, forge, counterfeit, and falsify a registration card to and for a motor vehicle, he committed a crime involving moral turpitude. (See *In re Kelley* (1990) 52 Cal.3d 487, 494; *Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1217; *In re Fahey* (1973) 8 Cal.3d 842, 849; *In re Hallinan*, *supra*, 43 Cal.2d at 247-248; *In re Rothrock* (1940) 16 Cal.2d 449, 454; *People* v. *Gaul-Alexander* (1995) 32 Cal.App.4th 735, 741; *People* v. *Leach* (1959) 168 Cal.App.2d 463, 467.)

The fact that here the city council has not declared a vacancy in the office of city clerk upon defendant's conviction does not change our analysis. Whatever reasons the council members may have in failing and refusing to perform their official duties, such inaction cannot prevent a determination that defendant committed a crime involving moral turpitude.[4] At the very least, a substantial question of law and fact is presented whether defendant's office is vacant without a declaration of vacancy by the city council.

Finally, we note the cautionary language of the Court of Appeal in *Lubin* v. *Wilson* (1991) 232 Cal.App.3d 1422, 1429-1430:

"Removal from public office is simply a consequence of a reasonable and sound public policy, and a condition imposed upon a public official in furtherance of the public interest in good government. Public officials are elected for the benefit of the community and can and should be removed, irrespective of detriment to the individuals involved if the interests of the community so require. [Citation.]

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] Whether individual council members may be prosecuted for "willful omission to perform any duty enjoined by law" (Gov. Code, § 1222; see *Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 774-775; 80 Ops.Cal.Atty.Gen. 36, 39 (1997); 76 Ops.Cal.Atty.Gen. 289, 292-293 (1993)) or removed from office for "willful or corrupt misconduct" (Gov. Code, § 3060; see *People* v. *Hayes* (1982) 129 Cal.App.3d 930, 938-939; *People* v. *Tice* (1956) 144 Cal.App.2d 750, 754; 80 Ops.Cal.Atty.Gen., *supra*, 40-41; 76 Ops.Cal.Atty.Gen., *supra*, 291) would depend upon the particular facts and present issues beyond the scope of this opinion. Obviously, if the city council had performed its legal duty on August 10, 1998, or thereafter, no application to remove defendant from office would be necessary.

. . . .

> ". . . Disqualification is automatic, a vacancy occurs, and the convicted person forfeits his or her office and the rights and powers incident to office. [Citation.] A person holds office subject to conditions imposed by the state and, where cause for removal is provided by law, the person is deemed to have accepted the office on condition he or she could be removed for that cause and in the manner provided. [Citation.]"

These words are particularly relevant here where defendant has been convicted of defrauding the state and is responsible in his official duties for protecting public funds of the City.


## PUBLIC INTEREST

Nevertheless, we must consider whether, assuming the existence of a justiciable issue, the maintenance of an action in quo warranto in the present circumstances would be consistent with the public interest. As noted at the outset, defendant's term expires on March 30, 1999. For all practical purposes, therefore, judicial proceedings may not reasonably be expected to terminate until after he leaves office. We view our discussion in 75 Ops.Cal.Atty.Gen. 10, 14 (1992) as dispositive:

> ". . . It is well settled that the mere existence of a justiciable issue does not require the Attorney General to grant leave to sue in quo warranto. [Citations.]

> "Investigation of the interests of the public must be undertaken in the context of the particular facts of each case. It is recognized that the public and each public entity have an interest in the undivided loyalty of their elected officers. [Citations.] Nevertheless, here the office sought to be declared vacant by the proposed action was acquired in April 1988 and expires in April 1992. Thus, less than four months remain of a four year term.

> "While it cannot be accurately predicted how long it would take for the present action to be filed, heard, and resolved, even in the absence of an appeal, it is at least reasonably probable that the issue would become moot prior to resolution. Accordingly, we perceive no basis for the expenditure of public funds for legal fees and court costs in connection with such a proceeding. . . ." (See also 75 Ops.Cal.Atty.Gen. 287, 289-290 (1992).)

Leave to sue in quo warranto is DENIED.

* * * * *