BILL LOCKYER Attorney General ANTHONY M. SUMMERS Deputy Attorney General
THE HONORABLE NORMAN L. VROMAN, MENDOCINO COUNTY DISTRICT ATTORNEY, has requested an opinion on the following questions:
1. May a school district make cash payments to members of its governing board in lieu of providing them with health insurance benefits?
2. If such cash payments are unauthorized, would making the payments constitute a criminal offense?
3. If such cash payments are unauthorized, may an individual bring a civil action for reimbursement against those members of the governing board who received the unauthorized payments?
 CONCLUSIONS
1. A school district may not make cash payments to members of its governing board in lieu of providing them with health insurance benefits.
2. Making such unauthorized cash payments may constitute a criminal offense, depending upon the individual circumstances.
3. A civil action for reimbursement may be brought by affected individuals or organizations, taxpayers, or the Attorney General against those members of the governing board who received the unauthorized cash payments.
 ANALYSIS
Education Code section 35160 provides:
 "On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."
Accordingly, while the powers of a school district are broad, they may not be exercised in a manner that is in conflict, inconsistent, or preempted by state law. (Cumero v. Public Employment Relations Board (1989) 49 Cal.3d 575, 591; 81 Ops.Cal.Atty.Gen. 218, 220-221 (1998).) We are asked whether granting cash payments to school board members instead of providing them with health insurance benefits would be inconsistent with state law, and if so, what would be the consequences of such unauthorized expenditures.
Preliminarily, we note that in interpreting the governing statutes, we may rely upon basic tenets of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.]" (Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, given them their usual and ordinary meaning. [Citations.]" (DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 601.) "Words must be construed in context, both internally and with each other to the extent possible." (California Mfgrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 844.) Interpretive constructions that defy common sense or lead to mischief or absurdity are to be avoided. (Fields v. Eu (1976) 18 Cal.3d 322, 328.)
1. Cash Payments in Lieu of Benefits
Education Code section 35120 provides in part:
 "(a)(1) In any school district in which the average daily attendance for the prior school year exceeded 400,000, each member of the city board of education or the governing board of the district who actually attends all meetings held may receive as compensation for his or her services a sum not to exceed two thousand dollars ($2,000) per month.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(7) In any school district in which the average daily attendance for the prior school year was less than 150, each member of the city board of education or the governing board of the district who actually attends all meetings held may receive as compensation for his or her services a sum not to exceed sixty dollars ($60) per month.
 "(8) Any member who does not attend all meetings held in any month may receive, as compensation for his or her services, an amount not greater than the maximum amount allowed by this subdivision divided by the number of meetings held and multiplied by the number of meetings actually attended.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(c) A member may be paid for any meeting when absent if the board by resolution duly adopted and included in its minutes finds that at the time of the meeting he or she is performing services outside the meeting for the school district or districts, he or she was ill or on jury duty, or the absence was due to a hardship deemed acceptable by the board.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
While the Education Code governs the amount of compensation paid to school district board members, the Government Code controls whether, and to what extent, the board members may receive health insurance benefits. The Legislature has enacted a comprehensive statutory scheme (Gov. Code, §§ 53200-53210) authorizing the granting of health and welfare benefits to the officers and employees of local agencies, including school districts, in specified circumstances.
Preliminarily, we note that health and welfare benefits constitute "compensation" for services rendered. (Thorning v. Hollister School Dist. (1992) 11 Cal.App.4th 1598, 1606-1607; 67 Ops.Cal.Atty.Gen. 467, 468-471 (1984) 62 Ops.Cal.Atty.Gen. 631, 633 (1979).) As such, health insurance benefits would ordinarily be subject to the limitations placed upon the amount of compensation allowed to school district board members under the terms of Education Code section 35120 However, Government Code section 53208 provides:
 "Notwithstanding any statutory limitation upon compensation or statutory restriction relating to interest in contracts entered into by any local agency, any member of a legislative body may participate in any plan of health and welfare benefits permitted by this article."
Because of the "notwithstanding" clause of Government Code section53208, a school district may provide its board members with health insurance benefits without concern for the limitations upon compensation found in Education Code section 35120 (See 83 Ops.Cal.Atty.Gen. 6, 7 (2000); 66 Ops.Cal.Atty.Gen. 13, 16 (1983); 54 Ops.Cal.Atty.Gen. 124, 125-126 (1971); 38 Ops.Cal.Atty.Gen. 116, 117 (1961).)
As specified in Government Code section 53208, however, the only authorized health and welfare benefits that a local agency may provide are those "permitted by this article." Health and welfare benefits are defined for purposes of this legislative scheme in Government Code section 53200, subdivision (d):
 "`Health and welfare benefit' means any one or more of the following: hospital, medical, surgical, disability, legal expense or related benefits including, but not limited to, medical, dental, life, legal expense, and income protection insurance or benefits, whether provided on an insurance or a service basis, and includes group life insurance as defined in subdivision (b) of this section." (Italics added.)
In 57 Ops.Cal.Atty.Gen. 330, 331 (1974), we considered the meaning of the words "provided on an insurance or a service basis" as contained in Government Code section 53200:
 "What is meant by providing benefits on an insurance or service basis cannot be ascertained from the article in which those sections appear. However, in the field of health care, generally speaking, the terms have well recognized meanings; to wit,
 "`A "service" plan is distinguished from an "insurance" plan in that the latter features indemnity paid to the "insured" [footnote omitted]. It reimburses him for all or part of an obligation which he has incurred. The principal feature of a "service" plan, on the other hand, is that as far as the benefits provided by it are concerned, the physician has agreed to look exclusively to the plan for payment. The member owes nothing. . . .' [Citations.]
 "We believe that because these particular definitions are so well recognized in the health care field, the Legislature must have intended that they be the definitions for purposes of Government Code sections 53205 and 52205.1 Thus, if the health care benefits inquired about — major medical plans, prescription drugs, long term disability coverage and dental care — are provided on an insurance basis, i.e., whereby the provider of such services looks for payment to the person covered who in turn is indemnified in whole or part by the insurer, or if they are provided on a service basis, i.e. whereby the provider of the services looks exclusively to the service plan for payment, the school district would be authorized to pay all or a part of the cost of such benefits." (Fn. omitted.)
May the school district allow its governing board members to choose their own service or insurance plans and be reimbursed for such costs? Government Code section 53202 provides:
 "In providing health and welfare benefits the local agency may approve plans of their officers and employees or may contract with one or more admitted insurers, health service organizations, or legal service organizations for such plan or plans of health and welfare benefits as the local agency shall determine to be in the best interests of the local agency and the officers and employees electing to accept the benefits. . . ."
Under this statutory authorization, a district may, rather than contracting itself, choose to approve an existing health care arrangement between its officers or employees and an insurer or health care provider. If the school district chooses to grant such approval, we see no impediment to the district paying for the benefit by way of reimbursement to its officers or employees instead of making direct payment to the insurer or health care provider.
This is not to say that cash payments may be made without approval of an existing plan. A school district may only make cash payments to its officers and employees as reimbursement for costs of approved health and welfare benefit plans that have been paid for by the officers or employees. The statutes do not permit simply allocating a sum of money to governing board members instead of providing them with health and welfare benefits. If a district chooses to provide such benefits, it must act under the authority of Government Code sections 53200-53210. Cash payments received in lieu of health insurance benefits would not constitute "health insurance benefits" as defined and as authorized under the terms of this legislative scheme.
We conclude that a school district may not make cash payments to members of its governing board in lieu of providing them with health insurance benefits.
2. Prosecuting a Criminal Offense
If a school district makes unauthorized cash payments in lieu of providing health insurance benefits, would the members of the governing board who approved the payments be subject to criminal prosecution? We conclude that they may, depending upon the individual circumstances.
Although a violation of Government Code sections 53200-53210
has not been defined as a crime by the Legislature, we note the general provisions of Government Code section 1222:
 "Every willful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or employment, where no special provision is made for the punishment of such delinquency, is punishable as a misdemeanor."
We have examined the application of Government Code section 1222 in a number of situations (see, e.g., 82 Ops.Cal.Atty.Gen. 246, 248 (1999); 82 Ops.Cal.Atty.Gen. 6, 10, fn. 4 (1999); 80 Ops.Cal.Atty.Gen. 36, 39-40 (1997); 76 Ops.Cal.Atty.Gen. 289, 292-293 (1993), as have the courts (see, e.g., Centinela Hospital Assn. v. City of Inglewood (1990)225 Cal.App.3d 1586, 1598; Griffis v. County of Mono (1985)163 Cal.App.3d 414, 427, fn. 15; Griswald v. Mt. Diablo Unified Sch. Dist. (1976) 63 Cal.App.3d 648, 656-658; Adler v. City Council (1960)184 Cal.App.2d 763, 774-775; see also Boags v. Municipal Court (1987)197 Cal.App.3d 65). The governing board of a school district has a duty to comply with the requirements of Government Code sections53200-53210 if it chooses to grant health insurance benefits to board members. A willful omission to comply with the terms of Government Code sections 53200-53210 may give rise to an application of Government Code section 1222. The district attorney of the county would be the appropriate public official responsible for investigating and prosecuting such an action against the governing board members who voted to make the unlawful expenditure. (See Gov. Code, § 26500; 77 Ops.Cal.Atty.Gen. 82, 84 (1994).) Of course, if an intent to defraud the public were established, the charge could conceivably be theft (Pen. Code, § 484) or embezzlement (Pen. Code, § 503). The totality of the circumstances must be examined in each case to determine if any, and if so which, crime has been committed.
We additionally note that the governing board members who refuse to comply with the terms of Government Code sections 53200-53210
may be subject to removal from office. (See Gov. Code, §§1770, subd. (h) [An office becomes vacant upon "[h]is or her conviction . . . of any offense involving a violation of his or her official duties"], 3060-3074 [conviction of "willful or corrupt misconduct in office" removes the person from office]; Lubin v. Wilson (1991) 232 Cal.App.3d 1422, 1427; People v. Hawes (1982)129 Cal.App.3d 930, 938-939; People v. Tice (1956) 144 Cal.App.2d 750,754; 82 Ops.Cal.Atty.Gen., supra, at p. 10, fn. 4; 80 Ops.Cal.Atty.Gen., supra, at pp. 40-41; 76 Ops.Cal.Atty.Gen., supra, at p. 291; 75 Ops.Cal.Atty.Gen. 64, 66-67 (1992).)
We conclude that making unauthorized cash payments in lieu of providing health insurance benefits may constitute a criminal offense, depending upon the individual circumstances.
3. Instituting a Civil Action
The final question concerns whether a civil action may be instituted to recover the funds unlawfully given to members of the school district's governing board in lieu of providing them with health insurance benefits. We conclude that a civil action may be filed by various persons.
Public officials who authorize improper expenditures may incur personal liability and be ordered to make restitution. (Stanson v. Mott (1976)17 Cal.3d 206.) In 81 Ops.Cal.Atty.Gen. 281, 291-292 (1998), we recently stated with respect to the unauthorized expenditure of funds by a community redevelopment agency:
 ". . . [A] redevelopment agency may be subject to a taxpayer's suit. [Citation.] As the chief law officer of the state [citations], the Attorney General has the power to bring actions to enforce state law. [Citation.] Thus, while no specific agency is given oversight responsibilities with respect to community redevelopment agencies, various means are available by which judicial review of an agency's actions may be obtained."
The filing of a "taxpayer's suit" mentioned in our 1998 opinion is authorized under the terms of Code of Civil Procedure section526a:
 "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. . . ."
In TRIM, Inc. v. County of Monterey (1978) 86 Cal.App.3d 539, 542, the Court of Appeal noted:
 "Taxpayers clearly have standing to challenge illegal expenditures of funds by county officials under section 526a [citation], and may also sue to enjoin wasteful expenditures [citation]."
"Waste," as that term is used in Code of Civil Procedure section526a, has been defined as a "useless expenditure of funds" (Harnett v. County of Sacramento (1925) 195 Cal. 676, 683) and an expenditure of funds that "provides no public benefits" (Sundance v. Municipal Court (1986) 42 Cal.3d 1101, 1139). In Sundance, the Supreme Court endorsed the following concept of "waste" described by the Court of Appeal in City of Ceres v. City of Modesto (1969) 274 Cal.App.2d 545,555:
 ". . . `[T]he term "waste" as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion. To hold otherwise would invite constant harassment of city and county officers by disgruntled citizens and could seriously hamper our representative form of government at the local level. Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure which does not meet with a taxpayer's approval. On the other hand, a court must not close its eyes to wasteful, improvident and completely unnecessary public spending merely because it is done in the exercise of a lawful power.'" (Id. at pp. 1138-1139.)
Accordingly, we conclude that a civil action for reimbursement may be brought by affected individuals or organizations, taxpayers, or the Attorney General against those members of the governing board who received unauthorized cash payments in lieu of health insurance benefits.