[Crim. No. 1503. Second Appellate District, Division One.—October 14, 1927.]

THE PEOPLE, Appellant, v. C. H. RICHARDS, Respondent.

87

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, Asa Keyes, District Attorney, and A. H. Van Cott, Deputy District Attorney, for Appellant.

Hewitt, Ford, McCormick & Crump and J. F. Moroney for Respondent.

SHAW, J., *pro tem.*—This is an appeal by the People from a judgment of dismissal given upon an order sustaining defendant's demurrer to an amended indictment. The amended indictment undertook to charge defendant with a violation of section 72 of the Penal Code, which, at the time of the offense alleged, read as follows: "Every person who, with intent to defraud, presents for allowance or payment to any state board or officer, or to any county, town, city, ward or village board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is guilty of a felony."

The indictment contained nine counts, each charging in language identical with the others, except as to the details of the claim, the presentation of a false and fraudulent claim to the board of supervisors of the Los Angeles County Flood Control District. The only argument made by respondent in support of the order sustaining the demurrer is that said board of supervisors is not one of the boards described in section 72, and hence the presentation of a false claim to that board is not made a public offense by this section. Manifestly that board is not within the section unless it can be regarded as a "state board or officer."

The term "state officer" has been frequently considered by the courts, and various meanings have been given to it according to the context and the nature and purpose of the constitutional or statutory provision in which it is found. In some cases it has been limited to officers exercising a state-wide jurisdiction, and in others it is further limited to such officers as belong immediately to the three constituent branches of the state government, or to the officers provided for in the constitution. In other decisions, the criterion has been whether the duties of the office directly concern the affairs of the state, and it has been said that an officer with such duties may be a state officer, although his duties are to be performed in a limited territory or district.

It has been held that a mine inspector is a state officer, although elected by a district, because the office directly concerns the affairs of the state. (*In re Lamb,* 251 Pa. 102 [96 Atl. 255].) Another case held that because the functions of a county game-warden concerned the state at large or the general public, he was not a county officer, although his duties were to be performed within the territorial limits

of a county, but he was either a state officer or a joint state and county officer. (*State* v. *Shagren,* 91 Wash. 48 [157 Pac. 31].) It has also been held that a local registrar of vital statistics who reports to a state registrar, although he may be a city or county officer acting *ex officio* as local registrar, is a state officer, because he is performing state functions. (*Ft. Smith Dist.* v. *Eberle,* 125 Ark. 350 [188 S. W. 821]; *Sacramento* v. *Simmons,* 66 Cal. App. 18, 25 [225 Pac. 36].) In holding that a public administrator for a particular county is a state officer, the supreme court of Illinois said: "All officers whose duties concern the state at large or the general public are state officers, although such duties are exercised within defined territorial limits." In the same case that court declared that an officer might be both a state officer and a county or city officer. (*Ramsay* v. *Van Meter,* 300 Ill. 193 [133 N. E. 193].)

Bearing in mind the evident purpose of section 72 to penalize the making of false and fraudulent claims against public funds, we see no reason for giving to the words "state board or officer," as used therein, any narrow or limited meaning. The common-law rule as to the strict construction of penal statutes does not apply to the code, but all its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice. (Pen. Code, sec. 4; *People* v. *Soto,* 49 Cal. 67; *People* v. *Fowler,* 88 Cal. 136 [25 Pac. 1110].)

Respondent's argument is that, under the rule embodied in the maxim, "*expressio unius est exclusio alterius,*" the mention in section 72 of county, town, and other boards and officers, all of whom, as he claims, might be regarded as state boards or officers, in the broadest sense, shows that the expression "state board or officer" must have been used in a more limited sense as referring only to boards, and officers whose powers and duties are state-wide. It is scarcely correct to say that all of the various boards and officers named in the section are state boards and officers, even in the broadest sense given to those terms by the authorities cited, for many of them do not perform services for or on behalf of the state. But aside from this, the rule of *expressio unius* is not of universal application. (*Blevins* v. *Mullally,* 22 Cal. App. 519, 529 [135 Pac. 307].)

"The maxim does not apply to a statute the language of which may fairly comprehend many different cases, in which some only are expressly mentioned by way of example merely, and not as excluding others of a similar nature." (2 Lewis' Sutherland on Statutory Instruction, sec. 495.) In *McKendrick* v. *Western Zinc Min. Co.*, 165 Cal. 24, 28 [130 Pac. 856, 867], it was held that the maxim should not be applied to a statutory enumeration very similar in its framework to that here involved. ■ We think the enumeration of county, town, and other boards and officers in section 72 is made by way of example and not for purposes of exclusion, and does not limit the effect of the preceding language.

Our conclusion is fortified by a consideration of the section heading prefixed to section 72. That section had never been amended up to the time when this case arose, and as originally enacted had the following section heading: "Fraudulently Presenting Bills or Claims to Public Officers for Allowance or Payment." ■ These original section headings are not merely editor's notes, but are integral parts of the code itself and must be consulted in ascertaining and interpreting the legislative will as expressed in the various sections. (*Bettencourt* v. *Sheehy*, 157 Cal. 698 [109 Pac. 89]; *Matter of Application of Wilson*, 30 Cal. App. 567 [158 Pac. 1050]; 23 Cal. Jur. 772.) At the time this section was adopted there were in existence school districts, reclamation districts, swamp land districts, and levee districts, none of which are expressly mentioned in section 72, and upon the argument of respondent all of them would be excluded from its operation. No logical reason can be imagined for excluding them or any other public board or officer from the operation of the section, and the section heading just quoted indicates that the legislature had no such intention. As we shall see, all of these existing public corporations have been classed as state agencies; and their boards and officers, as well as those of the numerous other state agencies of similar character for which statutory provision has since been made, should be regarded as state boards and officers within the meaning of section 72. ■ We adopt the following language of the court in *Milliken* v. *Meyers*, 25 Cal. App. 510, 514 [144 Pac. 321, 323], as indicating the meaning of those terms as used in this section:

"If, on the other hand, the services rendered by petitioner were those required to be performed for and on behalf of the state, such fact would render the position a state office. And, notwithstanding the duties in performance are restricted to the city, they do not, merely by reason thereof, become municipal in character."

Accepting that meaning, we next inquire as to the duties and functions of the officers of the Los Angeles County Flood Control District. That district was created in 1915 by a special act of the legislature. (Stats. 1915, p. 1502.) The purposes for which it was formed as declared in this statute were: "The objects and purposes of this act are to provide for the control of the flood and storm waters of said district, and to conserve such waters for beneficial purposes by spreading, storing, retaining or causing to percolate into the soil within said district, or to save or conserve in any manner, all or any of such waters, and to protect from damage from such flood or storm waters, the harbors, water ways, public highways and property in said district." To carry out these purposes, it was made a body politic and corporate, and given power to acquire and own property, to incur indebtedness, to issue bonds, to levy taxes, which are in reality special assessments, and to construct all necessary or proper works and improvements. The statute also provides: "The Board of Supervisors of Los Angeles County shall be, and they are hereby designated as, and empowered to act as, *ex officio* the Board of Supervisors of said Los Angeles County Flood Control District, and said Board of Supervisors is hereby vested with the same powers and shall perform the same duties for and on behalf of said district, and the government thereof, to carry out the purposes of this act that the Board of Supervisors of Los Angeles County now have or may hereafter have by law for said Los Angeles County, and shall also have such other or additional powers for said district as may be necessary to carry out any of the objects or purposes of this act above mentioned, or to exercise any of the said powers of said district; . . . "

This district is substantially similar in character, at least so far as the present matter is concerned, to irrigation districts and reclamation districts. (*Los Angeles Co. F. C. Dist.* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028].) In the

*Madera Irrigation District* case, 92 Cal. 296, 322 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 278], the nature of an irrigation district was elaborately discussed, and this declaration was made: "The district officers thus become public officers of the state. . . . Here are found the essential elements of a public corporation, none of which pertain to a private corporation. The property held by the corporation in trust for the public, and subject to the control of the state. Its officers are public officers, chosen by the electors of the district, and invested with public duties." Regarding reclamation districts, the supreme court has said: "If these districts can be said to be corporations at all; I think they are properly called public corporations for municipal purposes. That phrase means no more than that they are state organizations for state purposes. They certainly are not municipal corporations in the strict sense. . . . They are public agencies, which would cease to exist when the policy of the state has changed so that they are no longer required, or when there is no further function for them to perform." *People* v. *Reclamation Dist. No. 551,* 117 Cal. 114, 120 [48 Pac. 1016].) "Such districts are, in strictness, not corporations at all, but rather governmental agencies to carry out a specific purpose—the agency ceasing with the accomplishment of the purpose." (*People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, 382 [103 Pac. 207, 212].) Declarations of a similar character have been made regarding school districts, levee districts, and other similar organizations in *Pass School Dist.* v. *Hollywood Dist.,* 156 Cal. 416, 419 [20 Ann. Cas. 87, 26 L. R. A. (N. S.) 485, 105 Pac. 122], *Reclamation Dist.* v. *Birks,* 159 Cal. 233, 238 [113 Pac. 170], *Webster* v. *Board of Regents,* 163 Cal. 705 [126 Pac. 974], *Reclamation Dist.* v. *Superior Court,* 171 Cal. 672, 676 [154 Pac. 845], and *Southern Pac. Co.* v. *Levee Dist. No. 1,* 172 Cal. 345 [156 Pac. 502].

In *Reclamation Dist. No. 551* v. *County of Sacramento,* 134 Cal. 477, 479 [66 Pac. 668, 669], the court held that the property of a reclamation district is exempt from taxation under section 1 of article XIII of the constitution, which exempts from taxation property that "may belong to the United States, this state, or to any county or municipal corporation within this state." Referring to the property

of reclamation districts, the court said: "It is not necessary to hold this property, thus acquired, to be the property of a municipal corporation, in order to make it exempt from taxation. It would be sufficient to hold that it is public property of the state, within the meaning of the constitution. The whole scheme of reclamation originates with the state, and is carried to a conclusion by agents of the state—the district, as we have already seen, being a public agency—in furtherance of public policy. The property mentioned in section 3471 of the Political Code is public property, acquired by the agents of the state, for state purposes, and we think is exempt from taxation, as such."

In *Turlock Irr. Dist.* v. *White,* 186 Cal. 183, 189 [17 A. L. R. 72, 198 Pac. 1060, 1063], where it was contended that the property of irrigation districts had been exempted from taxation merely because of the inclusion in the exempting provisions of section 1, article XIII, already quoted, of the words "municipal corporation," the court said: "To the contrary, such exemption existed because of the express exemption of the property of *'the state,'* contained in that section and because of the implications in favor of the exemption of public property."

The plain conclusion from these authorities is that the *quasi* corporations under consideration, including irrigation districts, reclamation districts, and school districts, are all merely state agencies for carrying out state purposes and their property is state property.  It follows that their boards and officers are state boards and officers within the purview of section 72 of the Penal Code. We see no reason for making any distinction in this respect between the Los Angeles County Flood Control District and the other *quasi* corporations above mentioned.

Respondent contends quite urgently that the case of *Rose* v. *Superior Court,* 80 Cal. App. 739 [252 Pac. 765], is decisive of the point here involved, but we do not so regard it. In that case it was held that an irrigation district officer is subject to removal under section 772 of the Penal Code, which provides for the removal by a superior court of "any officer within the jurisdiction of the court." In *Kilburn* v. *Law,* 111 Cal. 237 [43 Pac. 615], it was held that section 889 must be considered with section 772 and limits it to proceedings against district, county, municipal, or township officers, and hence bank commissioners, being

state officers, are not subject to its operation. The argument made in the Rose case was that Rose, who was a director of an irrigation district, was a state officer and hence not subject to removal under section 772, the argument being largely based on the declaration in the Madera Irrigation District case that "the district officers thus become public officers of the state." As the court pointed out in the Rose case, this does not mean that they are officers exercising a state-wide authority, and the word "district" as used in section 889 is descriptive merely of a geographical part of the state, having no reference to the nature of the officer's functions. To put the matter in another way, the court in order to reach its conclusion in the Rose case was not required to hold, and did not hold, that irrigation district officers are not state officers, the latter term not being used in the statute under consideration. The decision is based merely on the proposition that they are district officers within the jurisdiction of the superior court. They are, of course, district officers because elected in and for a district, but we see no reason why they may not by reason of the nature of their functions be also state officers within the meaning of section 72.

For the foregoing reasons the judgment appealed from is reversed, and the court is directed to overrule the demurrer to the amended indictment.

Conrey, P. J., and Houser, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 12, 1927.