[No. F015210. Fifth Dist. Nov. 5, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR ISAAC CLARK, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II and IV.

**COUNSEL**

Andre P. Gaston, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Margaret Garnand Venturi and Alan Ashby, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BUCKLEY, J.**—In a case of first impression, we hold in the published part of this opinion that possession of a counterfeit bank bill does not constitute possession of a thing made use of in counterfeiting within the meaning of Penal Code section 480.[1]

## THE FACTS

On July 12, 1990, defendant attempted to purchase beer from a market in Ridgecrest with a suspiciously blurred $20 bill which looked like play money. Tender of the bill was rejected by the clerk; defendant asked for the return of the bill, saying that he wanted to keep it as a souvenir.

Before defendant drove away, a market employee recorded the number of defendant's license plate number. The market manager testified that four days later defendant returned to the market and reported that he had checked with other people, including a bank, who had said that the bill that he had previously tried to pass was okay.

On July 19, 1990, pursuant to a search warrant, officers searched defendant's residence at 439 North Balsam in Ridgecrest. Defendant was found with another person, later charged as codefendant, in the living room. Inside the top left-hand drawer of a desk in the living room, officers found a pile of currency mingled with two counterfeit bills, and a third counterfeit bill, separated from the pile. On top of the desk were receipts and other papers showing that the residence was in the name of the codefendant. When asked for his name and identification, defendant gave an officer the name "Mark Henry Anderson" and directed the officer to a wallet on the coffee table in front of the desk. The officer looked in the wallet and found a birth certificate bearing the name Mark Henry Anderson and a court citation dated

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

June 29, 1990, with the same name listing the Balsam Street address. The citation also indicated a vehicle description matching that of a Mercury registered to the codefendant.

At trial, it was stipulated that if called Deputy Sheriff Jim Rammert would testify that a fingerprint check of defendant's booking fingerprints with California identification indicated that the prints belonged to Victor Isaac Clark, even though defendant signed into the jail as Mark Anderson; the dates of birth of the two named individuals differed.

It was also stipulated that if Shirley Lewis were called to testify, she would state that in a conversation she had with defendant on February 23, 1990, defendant indicated that he was going to live at 439 North Balsam with Kate Laracuente.

United States Secret Service Special Agent David Gregg, an expert in counterfeiting, testified in detail to the defects in the paper, printing, and design of the counterfeit bills. He was able to recognize the flaws in the bills with the naked eye. In his opinion all three bills recovered from defendant were made with the same offset plate, and eighteen bills of this type had been reported in the Ridgecrest area. He testified it was common for arrestees in counterfeiting cases to give false names.

The market clerk testified that the three bills recovered looked just like the one defendant attempted to pass on July 12. Immediately after defendant was arrested on July 19, reports of distribution of counterfeit bills in the Ridgecrest area stopped.

Defendant was subsequently convicted of section 475 and section 480. Both sections generally relate to counterfeiting. The distinction between the two is at the heart of this appeal.

DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1259.

III. *Section 480.*

Defendant was charged by amended information with a violation of sections 475 and 480.[4] Defense counsel objected to the inclusion of section 480, arguing that section 480 was directed at those involved in the manufacture of counterfeit bills, rather than mere possessors. The prosecutor responded that because the counterfeit bills were paper used in the counterfeit process, section 480 was violated by the possession of the counterfeit bills. Defendant was ultimately convicted of both sections.

■ On appeal, defendant renews his argument that section 480 applies only to possession of raw materials and tools for counterfeiting, not to the completed counterfeit bill.

The People argue simplistically that because the statute proscribes possession of paper made use of in counterfeiting, it plainly includes a counterfeit bill, which is literally paper that was made use of in counterfeiting. Noting the paucity of published cases determining this issue and the lack of any definitive legislative history establishing that the Legislature intended to use the statute to prosecute knowing possession of a completed bill, the People rely on the arguments made below.

■ This court's task in construing a statute is to ascertain the intent of the Legislature in order to effectuate the law's purpose. The court should first turn to the words used in the statute. When the statutory language is clear and unambiguous, there is no need for construction, and the court should not undertake it. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) It must be determined whether the words of the statute, given their ordinary and popular meaning, are reasonably free from uncertainty or ambiguity. (*People* v. *Mel Mack Co.* (1975) 53 Cal.App.3d 621, 626 [126 Cal.Rptr. 505].)

---

[4]Section 475 provides as follows: "Every person who has in his or her possession, or receives from another person, any forged promissory note or bank bill, or bills, or any counterfeited trading stamp, or stamps, or lottery ticket or share purporting to be issued under the California State Lottery Act of 1984, or tickets or shares, for the payment of money or property, with the intention to pass the same, or to permit, cause, or procure the same to be uttered or passed, with the intention to defraud any person, knowing the same to be forged or counterfeited, or has or keeps in his or her possession any blank or unfinished note or bank bill made in the form or similitude of any promissory note or bill for payment of money or property, made to be issued by any incorporated bank or banking company, or any blank or unfinished check, money order, or traveler's check, made in the form or similitude of any check, money order, or traveler's check, whether the parties thereto are real or fictitious, with intention to fill up and complete the blank and unfinished note or bill, check, money order, or traveler's check, or to permit, or cause, or procure the same to be filled up and completed in order to utter or pass the same, or to permit, or cause, or procure the same to be uttered or passed, to defraud any person, is punishable by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year."

Section 480 is quoted, *infra*, page 1264.

Section 480 states:

"Every person who makes, or knowingly has in his possession any die, plate, or any apparatus, paper, metal, machine, or other thing whatever, made use of in counterfeiting coin current in this state, or in counterfeiting gold dust, gold or silver bars, bullion, lumps, pieces, or nuggets, or in counterfeiting bank notes or bills, is punishable by imprisonment in the state prison for two, three or four years; and all such dies, plates, apparatus, paper, metal, or machine, intended for the purpose of aforesaid, must be destroyed." (Stats. 1977, ch. 165, § 6, p. 642.)

■■■ At first glance, the plain meaning of the statute seems to encompass possession of a completed bill. The statute proscribes the knowing possession of any paper or other thing made use of in counterfeiting. To "make use" of something means to put to use, to use, or to employ. (See Webster's Third New Internat. Dict. (1986) p. 1364.) The verb "to counterfeit," used in the transitive sense reflected in the statute, means to imitate fraudulently, to copy with intent to deceive, or to make a fraudulent copy or replica of something of value. (Id. at p. 519.) Thus, on a very literal level, possession of counterfeit paper money constitutes possession of the paper made use of in counterfeiting.

Arguably the analysis should go no further. The plain meaning of the words used permits the construction urged by the People. ■■■ On the other hand, a conclusion that a statute is ambiguous need not be premised upon the use of words which are themselves ambiguous. The structure or interaction of various parts of a statute may provide a basis for a conclusion that a statute is ambiguous. (Cf. Stockton Sav. & Loan Bank v. Massanet (1941) 18 Cal.2d 200, 207 [114 P.2d 592].)

■■■ The last portion of the statute expressly provides that "such" instruments or paper intended for the purpose of counterfeiting currency or bills must be destroyed. "Such" is used in statutes to make clear that the second reference is to exactly the same concept mentioned previously. (People v. Jones (1988) 46 Cal.3d 585, 596 [250 Cal.Rptr. 635, 758 P.2d 1165].) It thus appears that the statute does not refer to completed counterfeit currency or the product of the counterfeiting implements.

The statute begins with a list of things which shall not be possessed. Those things comprise a class consisting of tools or materials which are used in making counterfeit currency. The general words "or any other thing whatever" follow. ■■■ It is established that where general words follow the enumeration of particular classes of things, the general words will be

construed as applicable only to things of the same general nature or class as those enumerated. The rationale is that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things, which would in that event become mere surplusage. (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676].) This rule of construction is applied with some stringency in construing criminal statutes. (*People v. Wolff* (1964) 61 Cal.2d 795, 821 [40 Cal.Rptr. 271, 394 P.2d 959].) The class consists of things used for printing or stamping and the paper upon which the printing is put. Arguably, the class includes only things that go into the process of making counterfeit currency. That the Legislature did not intend to include completed currency is bolstered by reference to the final sentence of the section, which mandates destruction of such materials which are intended for the aforesaid purpose. That purpose is counterfeiting, or the *making* of false copies. Surely a completed bill cannot be used to *make* a counterfeit copy.

Defendant urges this court to consider other indicia of legislative intent or purpose, such as the headings of the statute in question and other statutes concerning related subjects. Early cases established the rule that section headings as originally enacted may be considered integral parts of the code itself and as such may be said to reflect legislative intent. (See *People v. Richards* (1927) 86 Cal.App. 86, 90 [260 P. 582].) Headings not present in the official enactment, however, were considered unofficial and not binding upon the courts. (*In re Halcomb* (1942) 21 Cal.2d 126, 130 [130 P.2d 384].) Although some later cases permit reference to original headings (see, for example, *People v. Silverbrand* (1990) 220 Cal.App.3d 1621, 1626 [270 Cal.Rptr. 261]), our Supreme Court has noted that the use of headings in construction is controlled by section 10004. (*People v. Nichols* (1970) 3 Cal.3d 150, 158 [89 Cal.Rptr. 721, 474 P.2d 673], cert. den. 402 U.S. 910 [28 L.Ed.2d 652, 91 S.Ct. 1388], overruled on other grounds *People v. Henderson* (1977) 19 Cal.3d 86, 95-96 [137 Cal.Rptr. 1, 560 P.2d 1180].)[5]

Section 480 was originally enacted in 1872. As enacted it was identical to the present section except for a difference in the term of imprisonment. The statute had margin notes. Margin notes do not appear to come within the scope of section 10004. The note pertaining to section 480 is, "Making or possessing counterfeit dies or plates." The margin note pertaining to section 475, which is the predecessor to and is substantially similar to the present

---

[5]Section 10004 was enacted in 1941, after *People v. Richards, supra,* 86 Cal.App.3d 86, and provides as follows: "Division, chapter, article, and section headings contained herein shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any division, chapter, article or section hereof."

section 475, is "Passing or receiving forged notes." The margin notes of these antecedents indicate an intention on the part of the Legislature to proscribe and punish separately possession of counterfeiting tools and instruments and possession of completed bills.

■ Every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. Legislative intent may also be gleaned from consideration of the history and purpose of enactments, the previous state of the legislation on the subject, and other statutes in pari materia. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241].)

■ Reference to other counterfeiting statutes presently in effect (§§ 475 through 483) shows that the Legislature did separately proscribe and punish the counterfeiting or passing of gold or silver and the possession of such counterfeit. (§§ 477 and 479, respectively.) Also, within section 481.1, separate subdivisions proscribe the counterfeiting or altering of public transport fares and the possession or uttering of such fares. Section 480, the statute under consideration, has a counterpart in section 475, which expressly prohibits possession of forged bills. However, this pattern is not fully consistent. (See, for example, section 476, which proscribes, among other things, the making, uttering, *and* possession, of fictitious bank notes.)

Examination of the antecedents of section 480 reveals a similar pattern. In similar legislation enacted in 1850, making and possessing dies and plates for counterfeiting was proscribed and punished separately from possessing or uttering of counterfeit bills.[6] The margin notes indicate section 76 was directed to having forged notes or bills in one's possession; section

[6]The relevant provisions were as follows: "Every person who shall make, or knowingly have in his possession, any die or dies, plate or plates, or any apparatus, paper, metal, machine, or other thing whatever, made use of in counterfeiting the coin now made current, or hereafter to be made current in this State, or in counterfeiting bank notes or bills, upon conviction thereof shall be punished by imprisonment in the State prison for a term not less than one, nor more than fourteen years; and all such dies, plates, apparatus, paper, metal, or machine, intended for the purpose aforesaid, shall be destroyed." (Stats. 1850, ch. 99, § 78, p. 238.)

"Every person who shall have in his possession or shall receive from any other person any forged promissory note or notes, or bank bills, or bills for the payment of money or property, with intention to pass the same, or to permit, cause, or procure the same to be uttered or passed, with intention to defraud any person or persons, body politic or corporate, whether such person or persons, body politic or corporate, reside in or belong to this State or not, knowing the same to be forged or counterfeited, or shall have or keep in his possession any blank or unfinished note or blank bill, made in the form or similitude of any promissory note or bill for payment of money or property, made to be issued by any incorporated bank or banking company, with intention to fill up and complete such blank and unfinished note or bill, or to permit, or cause or procure the same to be filled up and completed in order to utter

78 was directed to making or having possession of dies, plates, etc. for counterfeiting.

In summary, review of what we perceive as legislative intent supports a conclusion that the Legislature has discerned separate harms and thus has separately treated the possession of completed counterfeit bills and the making or possessing of the means of counterfeiting. Since the advent of determinate sentencing, a violation of section 480 has been punishable by imprisonment in the state prison for two, three, or four years, while a violation of section 475 is punishable by imprisonment in the state prison for sixteen months, two, or three years or by imprisonment in the county jail for not more than one year. (Stats. 1977, ch. 165, § 6, p. 642; § 475, Stats. 1976, ch. 1139, § 213, pp. 5121-5122; see § 18.) The Legislature has recognized a potentially greater harm inherent in possessing the means for counterfeiting.

We conclude that possession of a counterfeit bill is violative of section 475, but *not* of section 480. The conviction thereon must be reversed.

IV. Insufficiency of the evidence.*

. . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment of conviction of violating section 480 (count 2) is reversed. In all other respects, the judgment is affirmed.

Ardaiz, Acting P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied December 1, 1992, and appellant's petition for review by the Supreme Court was denied February 10, 1993.

---

or pass the same, or to permit, or cause, or procure the same to be uttered and passed, to defraud any person or persons, body politic or corporate, whether in the state or elsewhere, shall, on conviction thereof, be punished by imprisonment in the State Prison for a term not less than one, nor more than fourteen years." (Stats. 1850, ch. 99, § 76, p. 238.)

 *See footnote, *ante*, page 1259.