Filed 6/16/16  P. v. Serrato CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | E063030 M/F |
| Plaintiff and Respondent, | (Super.Ct.No. RIF1104837) |
| v. | OPINION |
| RICARDO SERRATO, | |
| Defendant and Appellant. | |
| THE PEOPLE, | E063042 |
| Plaintiff and Respondent, | (Super.Ct.No. BAF1100302) |
| v. | |
| PATRICK ALLEN HALL, | |
| Defendant and Appellant. | |
| THE PEOPLE, | E063063 |
| Plaintiff and Respondent, | (Super.Ct.No. SWF1303316) |
| v. | |
| OBIE MCCRAY, JR., | |
| Defendant and Appellant. | |

1

APPEAL from the Superior Court of Riverside County.  Becky Dugan, Judge.

Reversed and remanded.

Steven L. Harmon, Public Defender, and William A. Meronek, Deputy Public

Defender, for Defendants and Appellants.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U.

Le, Deputy Attorneys General, for Plaintiff and Respondent.

Defendants and appellants Ricardo Serrato, Patrick Allen Hall, and Obie McCray,

Jr., appeal from an order denying their petitions to reduce their felony convictions for

unlawfully making, passing, uttering, publishing, or possessing, with an intent to defraud

(forgery) a $100 bill (Pen. Code, § 476)[1] to a misdemeanor pursuant to Proposition 47.

On appeal, they argue that under statutory interpretation, Proposition 47 applies to a

violation of section 476 where the forgery of "bills" or "bank bills" involves less than

$950.  For the reasons explained below, the trial court erred in finding Proposition 47 did

not apply to forgery of counterfeit bills in violation of section 476.  Accordingly, we

reverse the orders in each of the defendants' cases and remand for the trial court to

complete the Proposition 47 analysis.

---

[1]  All future statutory references are to the Penal Code unless otherwise stated.

# I

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Defendant Serrato*

On September 20, 2011, a felony complaint was filed charging Serrato with one count of felony willfully and unlawfully making, passing, uttering, publishing or possessing, with the intent to defraud any person, "a COUNTERFIET [*sic*] $100 BILL," in violation of section 476.  The complaint also alleged that Serrato had suffered four prior prison terms (§ 667.5, subd. (b)) and one prior serious and violent felony strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)), to wit, participation in a criminal street gang in violation of section 186.22, subdivision (a).

On January 30, 2012, in a plea to the court, Serrato pled guilty as charged and admitted the prior conviction allegations.  In return, Serrato was sentenced to a total term of seven years in state prison.[2]

On November 4, 2014, voters enacted Proposition 47, entitled "the Safe Neighborhoods and Schools Act" (the Act).  It went into effect the next day.  (Cal. Const., art. II, § 10, subd. (a).)  As of its effective date, the Act classifies as misdemeanors certain drug- and theft-related offenses that previously were felonies or

---

[2]  Serrato's sentence was initially suspended and he was placed on formal probation for a period of 36 months on various terms and conditions.  Serrato subsequently violated a term and condition of his probation, and the court imposed the previously suspended seven-year prison sentence.

"wobblers," unless they were committed by certain ineligible defendants. (Pen. Code, § 1170.18, subd. (a).)

The Act also included a provision that allows certain offenders to seek resentencing. Defendants who are serving a sentence for a felony that would have been a misdemeanor had Proposition 47 been in effect at the time of the offense may file a petition for recall of sentence. (§ 1170.18.)

On November 19, 2014, Serrato filed a petition for a recall of his sentence and for resentencing under section 1170.18.

On January 5, 2015, the People sent a response noting, "People waive presence and agree court may re-sentence" Serrato.

On January 22, 2015, the trial court denied Serrato's petition, finding he was "ineligible for resentencing pursuant to [section] 1170.18."

B. *Defendant Hall*

On May 18, 2011, a felony complaint was filed charging Hall with one count of felony willfully and unlawfully making, passing, uttering, publishing or possessing, with the intent to defraud any other person, "a COUNTERFEIT CURRENCY," in violation of section 476, and one count of misdemeanor false identification to a police officer in violation of section 148.9, subdivision (a). The complaint also alleged that Hall had suffered four prior prison terms (§ 667.5, subd. (b)) and one prior serious and violent felony strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)), to wit, assault with use of weapon in violation of section 245, subdivision (a)(1).

4

On May 26, 2011, Hall pled guilty to violating section 476 and admitted that he had suffered two prior prison terms and one prior strike conviction. In return, the remaining allegations were dismissed and Hall was sentenced to a total term of six years in state prison.

Following the passage of Proposition 47, on November 14, 2014, Hall filed a petition for resentencing and reduction of his offense to a misdemeanor pursuant to section 1170.18.

On January 28, 2015, the People filed a response, noting Hall was not entitled to relief because a violation of section 476 is not a qualifying felony as to counterfeit currency.

On January 28, 2015, the trial court denied Hall's petition, finding a violation of section 476 is not a qualifying felony under Proposition 47 and therefore defendant is ineligible for resentencing pursuant to section 1170.18.

C.    *Defendant McCray*

On October 30, 2013, a petition to revoke McCray's probation was filed. The petition alleged that defendant did willfully and unlawfully make, pass, utter, publish or possess, with the intent to defraud any other person, "a BANK BILL," in violation of section 476. The petition further alleged that McCray had suffered one prior prison term (§ 667.5, subd. (b)) and one prior serious and violent felony strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)), to wit, first degree burglary.

5

On November 6, 2013, McCray pled guilty as charged and admitted the prior prison term. In return, the remaining allegation was dismissed and McCray was sentenced to a total term of three years in state prison.

Following the passage of Proposition 47, on November 26, 2014, McCray filed a petition for resentencing and reduction of his offense to a misdemeanor pursuant to section 1170.18. In his Riverside Superior Court form petition entitled "Petition For Resentencing—Application For Reduction To Misdemeanor," McCray checked off that he was convicted of "Penal Code § 476 Forgery."

On February 4, 2015, the People filed a response, noting McCray was not entitled to relief because he had a "counterfeit $20 bill" and that a violation of section 476 is not a qualifying felony.

On February 4, 2015, the trial court denied McCray's petition, finding a violation of section 476 is not a qualifying felony under Proposition 47.

D.    *Motion for Reconsideration in All Three Cases*

On February 24, 2015, the public defender's office filed three identical motions for reconsideration in all three cases. In the motions, defense counsel argued that by virtue of amending section 473, section 476, like all forgery crimes, was amended by Proposition 47.

A hearing on the motions was held on March 4, 2015. The trial court denied all three motions for reconsideration at a single hearing, believing the Legislature did not intend Proposition 47 to include "counterfeit bills." At that time, defense counsel

6

requested the court to take judicial notice of the language listed on a dollar bill, which states "note." The court responded, "I think the Appellate Court can see that too; it does clearly say that. It says 'note.' And 'note' is the language included in [section] 473." The court further asserted, "I just don't believe the proposition writers intended to include a counterfeit bill. . . . If they tell me I'm wrong, I'm wrong."

All three defendants subsequently appealed.

On April 30, 2015, this court granted defendants' motions to consolidate the cases.

II

DISCUSSION

Raising a number of arguments, defendants urge this court to reverse the order denying their petitions for resentencing and remand the matter for further proceedings, arguing the trial court erred in finding section 476 was not a qualifying felony under Proposition 47. Specifically, defendants argue their offenses of possessing counterfeit currency is now punishable as a misdemeanor under Proposition 47 because the terms " 'bill,' " " 'bank bill,' " and " 'bank note' " are synonymous with " 'paper currency.' " Defendants further assert that the plain meaning rule "dictates that possession of forged or counterfeit currency is necessarily encompassed by section 476"; that the plain language of section 473, subdivision (b), also includes counterfeit currency; that there is no ambiguity in sections 473 or 476; that even if there were an ambiguity in sections 473 or 476, the intent of the electorate was to include counterfeit currency in resentencing defendants under Proposition 47. Defendants also contend that they are entitled to

7

resentencing because they were originally sentenced under section 473 and that section has been modified by Proposition 47; and that public policy goals of Proposition 47 are advanced by resentencing low level forgery offenders.

The People respond that Proposition 47 did not amend the sentence for defrauding another person with counterfeit bills or monetary currency; that the canons of statutory construction make it clear Proposition 47 did not alter the penalties for forgery through counterfeit bills; the use of the term " 'bills' " in section 476 is distinct from section 473's reference to the financial instruments of " 'bank bill' " and " 'note' "; and that the drafters of Proposition 47 intentionally excluded forgery through counterfeit bills based on sound public policy.

A.      *Standard of Review*

When interpreting a voter initiative, we apply the same principles that govern statutory construction.  (*People v. Briceno* (2004) 34 Cal.4th 451, 459 (*Briceno*); *People v. Rizo* (2000) 22 Cal.4th 681, 685-686 (*Rizo*).)  We first look " ' "to the language of the statute, giving the words their ordinary meaning." ' " (*Briceno* at p. 459; *Rizo* at p. 685.) " 'The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent].  [Citation.]  When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.]  In other words, 'our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure.' " (*Briceno*, *supra*, at p. 459.)  Our

8

review is de novo.  (*California Chamber of Commerce v. Brown* (2011) 196 Cal.App.4th 233, 248.)

B.    *The Act and Section 1170.18 Generally*

As previously noted, on November 4, 2014, voters approved the Act, which went into effect the next day.  (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.)  The Act reduced certain drug- and theft-related crimes from felonies or wobblers to misdemeanors for qualified defendants and added, among other statutory provisions, section 1170.18. (*People v. Contreras* (2015) 237 Cal.App.4th 868, 889-890 (*Contreras*).) Section 1170.18 creates a process through which qualified persons previously convicted of crimes as felonies, which would be misdemeanors under the new definitions in Proposition 47, may petition for resentencing.  (See generally *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108-1109.)  Specifically, section 1170.18, subdivision (a), provides:  "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act." Thus, in order to be eligible for resentencing, a defendant must be a person "who would

have been guilty of a misdemeanor" if Proposition 47 had been in effect at the time of his offense. (§ 1170.18, subd. (a).)

Under section 1170.18, subdivision (b), a defendant is entitled to be resentenced unless the trial court finds resentencing him would pose an unreasonable risk of danger to public safety. (See *People v. Shabazz* (2015) 237 Cal.App.4th 303, 310, fn. 3 (*Shabazz*).) In exercising its discretion, a trial court is authorized to consider, among other things, a defendant's criminal conviction history, a defendant's disciplinary record while incarcerated, and any other relevant evidence. (§ 1170.18, subds. (b)(1)-(b)(3); see *Shabazz, supra,* at p. 310, fn. 3.) "[U]nreasonable risk of danger to public safety" is defined in section 1170.18, subdivision (c), thusly, "[A]n unreasonable risk that the petitioner will commit a new violent felony within the meaning of [section 667, subdivision (e)(2)(C)(iv)]." (See *People v. Smith* (2015) 234 Cal.App.4th 1460, 1468-1469.)

The Act was intended to "ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70 (Pamphlet).) Essentially, the voters' intent in adopting Proposition 47 was to except dangerous and violent offenders from its benefits. The initiative is to be liberally construed. Section 15 states, "This act shall be

10

broadly construed to accomplish its purposes."  (Pamphlet, *supra*, text of Prop. 47, § 15, p. 74.)

        C.      *Defendants' Offenses*

Serrato pled guilty to willfully and unlawfully making, passing, uttering, publishing, or possessing, with the intent to defraud, "a COUNTERFIET [*sic*] $100 BILL," in violation of section 476.  McCray and Hall pled guilty to the same offense but the allegations in their cases referred to "a BANK BILL" and "a COUNTERFEIT CURRENCY," respectively.  Section 476 provides:  "Every person who makes, passes, utters, or publishes, with intent to defraud any other person, or who, with the like intent, attempts to pass, utter, or publish, or who has in his or her possession, with like intent to utter, pass, or publish, any fictitious or altered *bill*, *note*, or check, purporting to be the *bill*, *note*, or check, or other instrument in writing for the payment of money or property of any real or fictitious financial institution as defined in Section 186.9 is guilty of forgery."  (Italics added.)

Defendants' were convicted for making, passing, uttering, publishing, or possessing counterfeit bills in violation of section 476, which was not specifically amended in Proposition 47.  As such, the People argue that defendants are not entitled to Proposition 47 relief, noting "[t]he plain language of Proposition 47 did not alter [defendants'] penalty for possessing fictitious bills" and that "[t]he plain language of

11

Proposition 47 excludes forgery through counterfeit bills from its umbrella of relief."[3]

This argument, however, is irrelevant as sentencing for section 476 forgery offenses falls under section 473 and, with the Act's addition of subdivision (b) to section 473, a violation of section 476 is now classified as a misdemeanor.

Among the crimes amended by Proposition 47 is forgery. Section 473 is the punishment provision for all acts of forgery, including a violation of section 476. Prior to Proposition 47, section 473 stated that "[f]orgery is punishable by imprisonment in a county jail for not more than one year, or by imprisonment pursuant to subdivision (h) of Section 1170." Section 473 made clear that forgery was a "wobbler" that could be charged as a felony or misdemeanor. (See § 17.) A defendant guilty of section 476 is guilty of forgery and was punished pursuant to section 473.

Following Proposition 47, section 473 was amended. That section currently states:

"(a) Forgery is punishable by imprisonment in a county jail for not more than one year, or by imprisonment pursuant to subdivision (h) of Section 1170.

---

[3] The People also rely on *Eandi* for the proposition that the Act "only extends relief to six enumerated offenses, necessarily implying that Proposition 47 should be narrowly construed with regard to which criminal offenses can be reclassified under the Act." The Supreme Court has granted review in *People v. Eandi* (2015) 239 Cal.App.4th 801, review granted Nov. 18, 2015, S229305. An opinion is no longer considered published if the Supreme Court grants review (Cal. Rules of Court, rule 8.1105(e)(1)) and may not be relied on or cited. (Cal. Rules of Court, rule 8.1115(a); *People v. Kennedy* (2012) 209 Cal.App.4th 385, 400.)

"(b) Notwithstanding subdivision (a), any person who is guilty of forgery relating to a check, bond, *bank bill*, *note*, cashier's check, traveler's check, or money order, where the value of the check, bond, *bank bill*, *note*, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950)" is guilty of a misdemeanor, subject to exceptions not relevant here. (§ 473, subds. (a) & (b), italics added.)

As noted previously, II.B., *ante*, in order to be eligible for resentencing, defendant must be a person "who would have been guilty of a misdemeanor" if Proposition 47 had been in effect at the time of his offense. (§ 1170.18, subd. (a).) Applying that standard here, defendant Serrato would have been guilty of a misdemeanor under Proposition 47 had it been in effect when he made, passed, uttered, or possessed a $100 counterfeit bill. This is because Proposition 47 amended the sentencing for all forgery offenses under section 473, subdivision (b). In other words, after Proposition 47's passage, the prosecution does not retain its ability to charge a section 476 violation as a misdemeanor or a felony.

The People, nonetheless, assert that a judicial amendment to the Act extending it to apply to counterfeit bills under section 476 would violate the statutory interpretation canon *expressio unius est exclusio alterius* (*expression unius*). Generally, the statutory interpretation canon *expressio unius* means that inclusion of one thing in a statute indicates exclusion of another thing not expressed in the statute. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852.) The canon *expressio unius* has force when the items expressed in a statute are members of an " 'associated group or series,' " which justifies the conclusion

13

that items not mentioned were excluded by deliberate choice, not inadvertence. (*Barnhart v. Peabody Coal Co.* (2003) 537 U.S. 149, 168.)  The maxim *expressio unius*, "while helpful in appropriate cases, 'is no magical incantation, nor does it refer to an immutable rule.  Like all such guidelines, it has many exceptions. . . .  More in point here, however, is the principle that such rules shall always " 'be subordinated to the primary rule that the intent shall prevail over the letter.' " ' [Citations.]" (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 351.)  This canon does not aid the People because Proposition 47 amended section 473, adding subdivision (b), reducing the penalty for all forgery offenses to misdemeanor.

The People further maintain that the Legislature and the voters' did not intend for Proposition 47 to apply to section 476, forgery of counterfeit bills, and that the terms " 'bill' " and " 'note' " as used in section 476 are not the same as the terms " 'bank bill' " and " 'note' " as used in section 473.  For the reasons, explained below, we find the People's arguments unpersuasive.

D.      *Statutory Interpretation of Term "Bank Bill"*

Because the term "bank bill" was not defined in the ballot initiative and it is not defined in the Penal Code, we first turn to the words themselves, giving them their ordinary meaning.  "A dictionary is a proper source to determine the usual and ordinary meaning of a word or phrase in a statute." (*E.W. Bliss Co. v. Superior Court* (1989) 210 Cal.App.3d 1254, 1258, fn.2; see *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 ["When attempting to ascertain the ordinary, usual meaning of a

14

word, courts appropriately refer to the dictionary definition of that word" (construing

statutory term)]; *Scott v. Continental Ins. Co.* (1996) 44 Cal.App.4th 24, 30 ["It is thus

safe to say that the 'ordinary' sense of a word is to be found in its dictionary

definition."].)

As relevant here, the Black's Law Dictionary entry for "[b]ank bill," states "See

Bank *note*, *infra*." (Black's Law Dict. (5th ed. 1979) p. 132.) It defines "[b]ank note" as

"A promissory note issued by a bank or banker authorized to do so, payable to bearer on

demand, and intended to circulate as money." (*Ibid*.) It also states "See Federal reserve

notes." (*Ibid*.)[4] The Black's Law Dictionary defines "Federal reserve notes" as "Form of

currency issued by Federal Reserve Banks in the likeness of noninterest bearing

promissory note payable to bearer on demand. The federal reserve note (*e.g.* one, five,

ten, etc. dollar bill) is the most widely used paper currency. Such have replaced silver

and gold certificates which were backed by silver and gold. Such reserve notes are direct

obligations of the United States." (Black's Law Dict., *supra*, at p. 552.) The Black's

Law Dictionary defines the word "[b]ill" "As a legal term" with "many meanings and

applications" and provides four pages of the "most important" meanings and applications.

(Black's Law Dict., *supra*, at pp. 149-152.) As relevant here, it describes "[b]ill of

---

**4** During oral argument, the People noted that the most recent editions of Black's Law Dictionaries, which were revised prior to the passage of Proposition 47, removed the notation "See Federal reserve notes." The People, therefore, argued that the Legislature intended to remove forgery of dollar bills or paper money from the purview of Proposition 47. Having reviewed the most recent edition of Black's Law Dictionary and liberally construing the language of Proposition 47, we maintain that "bank bills" is synonymous to "bills" and that Proposition 47 applies to a violation section 476.

15

credit" as "[a] bill or promissory note issued by the government, upon its faith and credit, designed to circulate in the community as money." (*Id*. at p. 149.) It also states, "See Federal reserve notes; Treasury bill." (*Ibid*.)

Giving the term its commonsense meaning, as noted above, at first glance, a "bank bill" or "bank note" are synonymous with money in the form of currency or note, i.e., dollar bill, issued by the Federal Reserve banks. That commonsense understanding accords with dictionary definitions. (See Black's Law Dict., *supra*, pp. 132, 149, 552.) "On the other hand, a conclusion that a statute is ambiguous need not be premised upon the use of words which are themselves ambiguous. The structure or interaction of various parts of a statute may provide a basis for a conclusion that a statute is ambiguous. [Citation.]" (*People v. Clark* (1992) 10 Cal.App.4th 1259, 1264 (*Clark*).) Because the words "bank bill," "bill," "bank note," and "note" are ambiguous, " ' "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." ' " (*Briceno*, *supra*, 34 Cal.4th at p. 459.) "To the extent that uncertainty remains in interpreting statutory language, 'consideration should be given to the consequences that will flow from a particular interpretation' [citation], and both legislative history and the 'wider historical circumstances' of the enactment may be considered. [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 782-783.)

The People claim that because section 473, subdivision (b), does not mention "bills," money, currency, or coins, "Proposition 47 does not extend its umbrella of relief to forgery of fictitious bills." The People further posit that under statutory interpretation

16

and sound public policy, Proposition 47 does not apply to a violation of section 476, forgery through counterfeit money or " 'bills' " or "dollar bills," because use of the term " 'bills' " in section 476 "is distinct from the financial instruments of a 'bank bill' or 'note,' which Proposition 47 reaches by amending Penal Code section 473."

The forgery and counterfeiting statutes found in the Penal Code use the term "bill" and "bank bill" interchangeably. Indeed, section 470, entitled "Forgery; signatures or seals; corruption of records," uses the terms "bank bill" and "bill" interchangeably within the text of the statute. Subdivision (d) of section 470 uses the term "bank bill," while subdivision (e) of section 470 uses the term "bill."

Specifically, subdivision (d) of section 470, in relevant part, states: "Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: any check, bond, *bank bill*, or note, cashier's check, traveler's check, money order . . . ." (Italics added.) Subdivision (e) of section 470, provides: "(e) Upon a trial for forging any *bill* or note purporting to be the *bill* or note of an incorporated company or bank, or for passing, or attempting to pass, or having in possession with intent to pass, any forged *bill* or note, it is not necessary to prove the incorporation of the bank or company by the charter or act of incorporation, but it may be proved by general reputation; and persons of skill are competent witnesses to prove that the *bill* or note is forged or counterfeited." (Italics added.)

17

Section 470, subdivision (d), describes at length the items that may be forged or counterfeited. That subdivision also includes the "catch-all" provision of "any matter described in subdivision (b)." (§ 470, subd. (d).) Subdivision (b) of section 470 states, "Every person who, with the intent to defraud, counterfeits or forges the seal or handwriting of another is guilty of forgery."

The terms "bank bill" and "bills" are also used interchangeably throughout Chapter 4, "Forgery and Counterfeiting," in Title 13 of the Penal Code, "Crimes Against Property." (See §§ 470, 473, 475, 476, 480.) It is unlikely that the Legislature used the terms "bank bill" and "bill" within Chapter 4 on forgery offenses to mean different types of instruments or documents. The most reasonable explanation is that the terms are interchangeable and mean paper currency, paper money or dollar bills. It is also unlikely that the Legislature meant to exclude forged or counterfeit currency or dollar bills from the scope of sections 470, 473, and 475. Perhaps, the drafters of Proposition 47 were not " 'necessarily writing with [their] sharpest pen.' " (*Dagher v. Ford Motor Company* (2015) 238 Cal.App.4th 905, 918, quoting *Park City Services, Inc. v. Ford Motor Company, Inc.* (2006) 144 Cal.App.4th 295, 307.)

Applying principles of statutory construction, case law examining the language of the forgery and counterfeiting statutes also supports the position that the terms "bank bills" and "bills," as well as "note" and "bank note," are synonymous with paper money. In *People v. Bedilion* (1962) 206 Cal.App.2d 262 (*Bedilion*), the defendant was charged with possession of forged checks with the intent of completing them to defraud in

18

violation of section 475. (*Bedilion*, *supra*, at p. 265.) The defendant had possession of some 300 genuine blank checks. (*Ibid*.) It was determined that the checks were not forged since they contained no date, amount, payee nor signature of payor, hence were incapable of defrauding. (*Id*. at pp. 265-269.) Therefore, the crime of possessing forged checks was not established. (*Id*. at pp. 268.) The Court of Appeal noted, "Regardless of the character of a check under our modern negotiable instruments law, it was not, and is not now, a *bank bill* or *bank note*." (Id. at p. 269.)

Construing a prior version of section 475, the court explained: "A satisfactory analysis of the purpose of section 475 of the Penal Code, as it read prior to its amendment in 1961, requires that note be taken that it had remained unchanged since its enactment in 1872 and that in its codification it remained substantially in the same form and language as it appeared in the Crimes and Punishment Act. (Stats. 1850, ch. 99, § 76, p. 238.) At that time the expressions 'bank bill' and 'bank note' were synonymous terms, and the word 'bill' in 'bank bill' derived from the expression 'bill of credit' as used in early banking history, rather than from 'bill of exchange', a three-party instrument which includes a check under the terms of section 3265a of the Civil Code. [Citation.] 'A check differs materially from a bank note. The latter is issued as currency under legal restrictions which give to it the character of money. The check is not currency, although it may pass current from hand to hand.' [Citation.] 'The words "bank bill" and "bank note" are synonymous terms. A bank bill or a bank note may be defined as a written promise on the part of the bank to pay to the bearer a certain sum of money, on

19

demand; an obligation for the payment of money on demand, passing from hand to hand as money; . . .' [citations].)  [¶]  Of course, today the issuance of such bank notes or bills is generally forbidden private banks and 'bills,' our paper currency, are issued only by the Federal Reserve banks.  [Citations.]"  (*Bedilion*, *supra*, at p. 269.)

In *People v. Ray* (1996) 42 Cal.App.4th 1718 (*Ray*), the defendant possessed a photocopy machine and passable photocopies of Federal Reserve notes.  He was convicted of violating section 480, which makes it a crime to knowingly possess "any apparatus, . . . machine, or other thing whatever, made use of . . . in counterfeiting bank notes or bills . . . ."  (§ 480, subd. (a).)  In *Ray*, the defendant argued "the evidence is insufficient to support his conviction of violating section 480 because the statute does not prohibit counterfeiting Federal Reserve notes."  (*Ray, supra,* 42 Cal.App.4th at p. 1721.)  Applying principles of statutory construction, the Court of Appeal upheld the defendant's conviction.  Citing *Bedilion*, the court stated:  "The term 'bills' as used in section 480 refers to 'our paper currency.'  [Citation.]  The issuance of Federal Reserve notes is governed by 12 United States Code section 411.  The purpose behind the federal statute is to make clear that Federal Reserve notes are authorized currency of the United States.  [Citation.]  Here, the term 'bills' used in section 480 must be construed to include 'Federal Reserve notes.' "  (*Ray, supra,* at p. 1722, fn. omitted.)

Another case using the terms "bill" and "note" interchangeably is *People v. Harben* (1907) 5 Cal.App. 29 (*Harben*).  There, the defendant had pasted together two $20 bills purportedly issued by a New Jersey state bank, and was charged with violating

section 476, "passing a fictitious bank bill [or bank note]." (*Harben*, *supra*, at p. 30.) The case arose before the Federal Reserve began issuing bills or notes and at a time when state banks were issuing paper money. Analyzing section 476, the court used the terms "bill" and "bank note" in the same sentence to mean the same thing: deceptive or counterfeit money. The court explained: "As pasted together, the two bills were in effect a simulation of a current *bank note*, and intended to deceive. . . . Being false, fictitious, and 'not genuine,' the only test of whether or not the passage of this '*bill*' was a crime was the intent to defraud on the part of the defendant." (*Harben*, at p. 33.)

In *Clark*, *supra*, 10 Cal.App.4th 1259, the court used the term "bank bill" to refer to a $20 bill. The court stated, "In a case of first impression, we hold in the published part of this opinion that possession of a *counterfeit bank bill* [a $20 bill issued by the Federal Reserve] does not constitute possession of a thing made use of in counterfeiting within the meaning of Penal Code section 480." (*Id.* at p. 1261, italics added.) Although the definition of " 'bank bill' " was not before the court in *Clark*, as the People note, the court assumed that a " 'bank bill' " meant a " 'bill' " or paper money rather than a promissory note that is not paper money.

*People v. Burkett* (1969) 271 Cal.App.2d 130 (*Burkett*), where the defendant was convicted of violating section 470 after being caught actuating a coin changing machine with photocopies of a dollar bill, is also relevant here. In part, the defendant in *Burkett* argued his conduct did not violate the statute because the photocopies did not constitute bank bills or notes. The appellate court declined to decide this question, concluding the

21

item defendant used fell under the category of " 'the seal or handwriting of another.' [Citation.]" (*Burkett, supra,* at p. 134.) "The currency in evidence, from which the photocopies in evidence were made, shows on its face a facsimile of the seal of a Federal Reserve Bank, and the facsimile signatures of the Treasurer of the United States and of the Secretary of the Treasury. It follows that the photocopies were forgeries of both the 'seal' and the 'handwriting' of someone other than defendant . . . ." (*Ibid.*)

*Bedilion* held that the term "bills" properly refers to United States paper currency. Seizing upon the last phrase in *Bedilion*, *supra*, 206 Cal.App. at p. 269 " 'bills,' our paper currency . . ," the People argue that the court impliedly found " 'bills' " are the only type of paper currency that exists, and therefore a " 'bank bill' " cannot be considered paper currency. Based on the above analysis, the People are mistaken. Although *Bedilion* involved section 475, the same definition of "bill" applies to both sections 475 and 476: "It is a settled principle of statutory construction that when a word or phrase has been given a particular meaning in one part of a law, it is to be given the same meaning in other parts of the law." (*City of Sacramento v. State of California* (1984) 156 Cal.App.3d 182, 197, overruled on another ground in *County of Los Angeles v. State of California* (1987) 43 Cal.3d 46, 58, fn. 10.) Moreover, "Every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. Legislative intent may also be gleaned from consideration of the history and purpose of enactments, the previous state of the legislation on the subject, and other statutes in pari materia. [Citation.]" (*Clark*, *supra*, 10 Cal.App.4th at p. 1266, citing

*Stafford v. Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805.)  Accordingly, the use of the term "bank bill" in sections 470, 473, and 475 and "bill" in sections 470 and 476 must be construed to mean the same thing:  paper money or paper currency.

Additional support for this construction of the terms "bank bill" and "bill" follows from other well-established rules:  "In interpreting legislative enactments, 'we indulge in a presumption that constitutional and legislative provisions were not intended to produce unreasonable results.  [Citations.]'  'Where a statute is susceptible of two constructions, one leading to mischief or absurdity, and the other consistent with justice and common sense, the latter must be adopted.  [Citations.]' "  (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1424.)  It would indeed lead to an absurd consequence if the terms "bank bills" and "bills" were not read to mean paper money or paper currency or that the Legislatures did not intend section 476 to apply to Proposition 47.  Indeed, sections 473, 475, and 476 are similar with the exception of the use of the term "bank bill" or "bill."

Moreover, under the rule of lenity, "[w]hen language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit.  The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute."  (*People v. Overstreet* (1986) 42 Cal.3d 891, 896.)  "Strict construction of penal statutes protects the individual against arbitrary discretion by officials and judges and guards against judicial usurpation of the legislative function which would result from enforcement of penalties when the

23

legislative branch did not clearly prescribe them.  Strict construction also prevents judicial interpretation from changing the legal consequences of acts completed prior to the decision and thus aids in meeting the requirement that a defendant have fair warning of the consequences of his acts reflected in the constitutional prohibition against ex post facto laws."  (*Ibid.*)

Finally, our conclusion that "bank bill" and "bill" are synonymous terms and, therefore, Proposition 47 applies to a violation of section 476 is consistent with the purposes of the Act.  As noted, the Act is intended to provide resentencing relief to low-risk, nonviolent inmates serving life sentences for petty crimes, such as forgery, shoplifting, and simple drug possession.  (Pamphlet, *supra*, text of Prop. 47 at p. 70.)

Accordingly, based on the record before us, the trial court erred in concluding a conviction for section 476 was not a qualifying felony under Proposition 47.  There is nothing in the record to indicate that defendants are ineligible based on any other disqualifying factors, and their forgery convictions related to unlawfully making, passing, uttering, publishing, or possessing, with an intent to defraud, "a bank bill," "a counterfeit currency," and "a counterfeit $100 bill" was worth less than $950.  However, remand is required because the trial court did not determine whether resentencing defendants would pose an unreasonable risk of danger to public safety.  "The trial court's decision on a section 1170.18 petition is inherently factual, requiring the trial court to determine whether the defendant meets the statutory criteria for relief," including whether a

24

defendant poses " 'an unreasonable risk of danger to public safety.' " (*Contreras*, *supra*, 237 Cal.App.4th at p. 892; § 1170.18, subd. (b).)

## III

## DISPOSITION

The orders denying Proposition 47 relief are reversed and the matters are remanded for the trial court to determine whether resentencing defendants Serrato, Hall, and McCray would pose an unreasonable risk of danger to public safety.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:


CODRINGTON

                J.


SLOUGH

                J.